**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **GILBERTO HERNANDEZ,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **Civil Action No. 3:04-CV-2028-BH (B)** |
| **v.** | § | |
| | § | |
| **DUNCANVILLE SCHOOL DISTRICT,** | § | |
| **et al.,** | § | |
| | § | |
| **Defendants.** | § | **Consent Case** |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Pursuant to the District Court's *Order of Transfer*, filed January 13, 2005, this matter has been transferred to the undersigned United States Magistrate Judge for the conduct of all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c). Before the Court are:

(1)   *Defendants Jerry Cook's and Robbie Blacknall's Motion for Summary Judgment on the Grounds of Qualified Immunity* ("MSJ"), filed June 16, 2005;

(2)   *Defendants Jerry Cook's and Robbie Blacknall's Brief in Support of Motion for Summary Judgment on the Grounds of Qualified Immunity* ("MSJ Br."), filed June 16, 2005;

(3)   *Appendix in Support of Defendants Jerry Cook's and Robbie Blacknall's Motion for Summary Judgment on the Grounds of Qualified Immunity* ("MSJ App."), filed June 16, 2005;

(4)   *Plaintiff's Response to Defendants Jerry Cook's and Robbie Blacknall's Motion for Summary Judgment on the Grounds of Qualified Immunity* ("Pl. Resp."), filed July 22, 2005;

(5)   *Plaintiff's Brief in Support of Plaintiff's Response to Defendants Jerry Cook's and Robbie Blacknall's Motion for Summary Judgment on the Grounds of Qualified Immunity* ("Pl. Br."), filed July 22, 2005;

(6)   *Plaintiff's Brief in Support of Plaintiff's Response to Defendants Jerry Cook's and Robbie Blacknall's Motion for Summary Judgment on the Grounds of Qualified*

*Immunity* ("Pl. App."),[1] filed July 22, 2005; and

(7)     *Defendants' Jerry Cook's and Robbie Blacknall's Reply to Plaintiff's Response to Defendant's Cook's and Blacknall's Motion for Summary Judgment on the Grounds of Qualified Immunity* ("MSJ Reply"), filed August 8, 2005;

Based on the filings listed above and the applicable law, the Court is of the opinion that the motion for summary judgment should be **GRANTED**.

## I. BACKGROUND

During the 2002-2003 school year, Plaintiff Gilberto Hernandez ("Plaintiff") was a first year teacher of bilingual first graders at Acton Elementary School ("Acton") in the Duncanville Independent School District ("District"). (Def. Ans. at 2-3.) On March 28, 2003, Acton Principal Robbie Irene Blacknall ("Blacknall") informed Plaintiff that she planned to recommend to the District's Board of Trustees ("Board") that his probationary contract not be renewed. *Id*; *see also* Compl. at 3. The Board voted on March 31, 2003 to terminate Plaintiff' probationary contract at the end of the contract year. (Def. Ans. at 3.)

On February 6, 2004, Plaintiff, proceeding pro se, filed suit ("*Hernandez* I") against the District, Blacknall, and District Superintendent Dr. Jerry Cook ("Cook"). On August 20, 2004, the United States District Court for the Northern District of Texas granted Defendants' Rule 12(b)(5) motion to dismiss for failure to effect service, and dismissed all of Plaintiff's claims without prejudice. Subsequently, the Court denied the District's counterclaim for attorneys' fees based on the suit's dismissal on procedural grounds, but granted the District's counterclaim for costs.

Plaintiff filed the instant action on September 17, 2004 ("*Hernandez* II"), asserting claims identical to those asserted in *Hernandez* I. Specifically, he alleges that Defendants discriminated

---

[1]This document is titled as a brief, but is actually the appendix to Plaintiff's brief in response to Blacknall and Cook's summary judgment motion.

and retaliated against him in violation of Title VII and the Fourteenth Amendment.[2] (Compl. at 1-2.) Plaintiff also asserts claims of wrongful termination, slander, libel, defamation of character, fraud and conspiracy, and appears to assert a claim for intentional infliction of emotional distress. (Compl. at 2-4.)  Furthermore, Plaintiff asserts that Defendants violated his rights under § 21.351 of the Texas Education Code and § 89.1201 of the Texas Administrative Code.  *Id.*  He also claims that he "was deprived of his property interest in his employment contract provided under the Term Contract Nonrenewal Act."  *Id.* at 3.  By this action, he seeks compensatory and punitive damages. *Id.* at 4.

On December 20, 2004, Defendants moved to dismiss all of Plaintiff's state law and Title VII claims, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(c).  The Court granted Defendants' motion on March 29, 2004; thus, only Plaintiff's § 1983 claims remain.

At the time Defendants moved to dismiss Plaintiff's suit, Blacknall and Cook moved the Court to require that Plaintiff file a Rule 7(a) reply.  The Court granted that motion on March 29, 2005, and stayed discovery pending resolution of the issue of qualified immunity.  *See Hernandez v. Duncanville Ind. Sch. Dist.*, 2005 WL 723458, at *9-10 (N.D. Tex. Mar. 29, 2005).  Plaintiff filed a timely Rule 7(a) reply on April 15, 2005.  On May 17, 2005, the Court entered its *Second Amended Order Regarding Case Management and Scheduling* directing Blacknall and Cook to file a dispositive motion to address the qualified immunity issue.[3]

---

[2]Plaintiff has sued Blacknall and Cook in both their individual and official capacities.  (Compl. at 1.)

[3]Blacknall and Cook appear to imply that the Court ordered them to file a dispositive motion on the issue of qualified immunity based on deficiencies in Plaintiff's Rule 7(a) reply.  (*See* Def. Br. at 2.)  As stated in its scheduling order issued May 17, 2005, the Court ordered Blacknall and Cook to file a dispositive motion in order to resolve the qualified immunity issue.  The Court did not issue that order based on an evaluation of the contents of Plaintiff's Rule 7(a) reply.

3

On June 16, 2005, Blacknall and Cook filed the instant motion for summary judgment, asserting that they are entitled to qualified immunity on Plaintiff's § 1983 claims.  (MSJ at 1.) Blacknall and Cook argue that Plaintiff has failed to identify any clearly established right of which their actions deprived him, and that even if he could, he cannot show that their actions were objectively unreasonable.  (MSJ at 8.)  Plaintiff's response, filed July 22, 2005, alleges that Blacknall and Cook violated his clearly established rights under the First and Fourteenth Amendments and that genuine issues of material fact preclude summary judgment on Blacknall and Cook's claim of qualified immunity.[4]  (Resp. at 3.)  On August 8, 2005, Blacknall and Cook filed a reply, in which they object to Plaintiff's discussing alleged constitutional violations in his response which he did not raise in his Rule 7(a) Reply.  *Id*. at 13-16.  Blacknall and Cook also move in their reply to strike a number of documents in the appendix to Plaintiff's response.[5]  (MSJ Reply at 3-5.) This matter is now before the Court and ripe for determination.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  "[T]he substantive law will identify which facts are material."

---

[4]Plaintiff also asserts that he was discriminated and retaliated against in violation of 28 U.S.C. § 1343 and 42 U.S.C. § 1983.  Neither statute can be "violated."  The former statute confers jurisdiction over a court where a plaintiff asserts a claim under a substantive statute to which 28 U.S.C. § 1343 refers, and the latter provides a vehicle for addressing federal civil rights violations.  *See Deleo v. Rudin*, 328 F. Supp. 2d 1106, 1114 (D. Nev. 2004) ("Section 1343 does not create a cause of action itself; it confers jurisdiction where the plaintiff otherwise has stated a cause of action") (citing *Am. Sci. & Eng'g, Inc. v. Califano*, 571 F.2d 58, 63 n. 8 (1st Cir.1978); *Dorak v. Shapp*, 403 F. Supp. 863, 865 (M.D. Pa. 1975)); *Jackson v. Dallas Ind. Sch. Dist.*, 1999 WL 58846, at *1 n.1 (N.D. Tex. Feb. 1, 1999) ("42 U.S.C. § 1983 cannot be "violated," of course. It is not a substantive provision that confers civil rights, but is a remedial statute that makes those who act under color of state law, and who violate another's federally secured rights, liable for their actions.").

[5]The Court denies Blacknall and Cook's  request to strike Defendant's summary judgment evidence as moot, based on its finding that Blacknall and Cook's motion for summary judgment should be granted.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The pleadings, depositions, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists.  FED. R. CIV. P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24.  To carry this burden, the "opponent must do more than simply show . . . some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor.  *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).  Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial.  *Celotex*, 477 U.S. at 322-23.

Generally, the pleadings of a plaintiff who is proceeding *pro se* must be liberally construed in his favor.  *See Hurd v. Doe*, 2003 WL 21640569, *3 (N.D. Tex. July 10, 2003).  However, under

5

Rule 56 of the Federal Rules of Civil Procedure, the court does not have an obligation to "'sift through the record in search of evidence' to support the nonmovant's opposition to the motion for summary judgment." *Crane v. Bowles*, 2004 WL 1057771, at *1 (N.D. Tex. May 6, 2004) (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994)). Instead, "the party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim." *Id.* (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

### III. QUALIFIED IMMUNITY STANDARD

Blacknall and Cook assert that they are entitled to qualified immunity on all of Plaintiff's remaining § 1983 claims against them in their individual capacities, based on Plaintiff's failure to identify any clearly established constitutional right of which he was deprived by their actions. (MSJ Br. at 3-4.) They argue further that even if the Court finds that Plaintiff has identified constitutional rights violations, he cannot show that their actions were objectively unreasonable. *Id.* at 4.

A government official who is sued for a constitutional violation pursuant to § 1983 may assert the affirmative defense of qualified immunity. *White v. Taylor*, 959 F.2d 539, 544 (5th Cir.1992). Qualified immunity protects government officials performing discretionary functions from suit and liability for civil damages to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The law is deemed to be clearly established if the contours of a right asserted are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *White*, 959 F.3d at 544. The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Whether the conduct of which the plaintiff complains violated clearly established law is

essentially a legal question. *White*, 959 F.3d at 544.

To determine whether Blacknall and Cook are entitled to qualified immunity, the threshold question is whether, on the facts alleged by Plaintiff, a clearly established constitutional right would have been violated. *See Saucier v. Katz*, 533 U.S. 194, 200 (2001). Assuming the facts alleged by Plaintiff are true, if Blacknall and Cook did not violate a constitutional right, the Court need inquire no further. *Id.* at 201. If Plaintiff can show that his constitutional rights were violated, the Court must then determine whether Defendants' conduct was objectively reasonable in light of clearly established law at the time of the challenged conduct. *Id.*; *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001). "Even if an official's conduct violates a constitutional right, he is entitled to qualified immunity if the conduct was objectively reasonable." *McClendon v. City of Columbia*, 258 F.3d 432, 438 (5th Cir. 2001).

## IV. ANALYSIS

### A.    First Amendment Claims

Plaintiff alleges in his complaint that he was terminated based on his speech condemning poor treatment of Hispanic students and for helping Hispanic parents communicate with the School Board, as well as speaking with other bilingual teachers. (Compl. at 2-3.) Plaintiff further argues in his Rule 7(a) Reply that Blacknall violated his First Amendment rights by refusing to allow him to teach in Spanish. (Rule 7(a) Reply at 18-19.) In his response to Blacknall and Cook's motion for summary judgment, Plaintiff argues that he was terminated in retaliation for reporting standardized testing irregularities. (Pl. Resp. at 18; Pl. Br. at 5.) Therefore, the threshold question in the qualified immunity analysis here is whether, assuming the facts alleged by Plaintiff are true,

Blacknall and Cook's conduct violated the First Amendment.[6]

## 1.      First Amendment Standard

To establish a First Amendment retaliatory discharge claim under § 1983, Plaintiff must

show that: "(1) [he] suffered an adverse employment action; (2) the speech at issue involved matters

of public concern; (3) [his] interest in the speech outweighs the government's interest in efficiency;

and (4) the speech precipitated the adverse employment action." *Alexander v. Eeds*, 392 F.3d 138,

142 (5th Cir. 2004) (citing *Kinney v. Weaver*, 367 F.3d 337, 356 (5th Cir. 2004)).  "If this test is

passed, the burden shifts to Defendants to show that "'they would have come to the same conclusion

in the absence of the protected conduct.'" *Alexander*, 392 F.3d at 144 (quoting *Beattie*, 254 F.3d

595, 601 (5th Cir. 2001).

Blacknall and Cook do not dispute that Plaintiff's contract nonrenewal constitutes an adverse

employment action, but vigorously dispute that Plaintiff's allegedly protected speech addressed

matters of public concern.  (MSJ Reply at 17.)  "'Whether the speech at issue relates to a matter of

public concern is a question of law to be resolved by the court.'"  *Markos v. City of Atlanta, Tex.*,

364 F.3d 567, 570 (5th Cir. 2004) (quoting *Tompkins v. Vickers*, 26 F.3d 603, 606 (5th Cir.1994)).

"Generally, the inquiry is whether the public employee was speaking as a citizen upon matters of

public concern or as an employee upon matters only of personal interest." *Markos*, 364 F.2d at 570

(citing *Harris v. Victoria Ind. Sch. Dist.*, 168 F.3d 216, 221 (5th Cir. 1999) (citing *Connick v. Myers*,

461 U.S. 138, 147 (1982)).  "The existence of an element of personal interest on the part of an

---

[6]The Court notes that Plaintiff raised two First Amendment claims in his complaint that he failed to address
in his Rule 7(a) reply; he elaborated on those claims for the first time in his summary judgment response.  Liberally
construing Plaintiff's Rule 7(a) reply and summary judgment response, he has raised a new First Amendment claim
that he labeled as a due process claim in the former and as a Fourteenth Amendment claim in the latter.  Based on the
Court's liberal construction of Plaintiff's First Amendment claims, and because Blacknall and Cook moved for the
dismissal on qualified immunity grounds of *all* of Plaintiff's remaining § 1983 claims and address the new claims in
their reply brief, the Court likewise addresses these new First Amendment claims.

employee does not prevent a finding that the speech as a whole raises issues of public concern; but an employee cannot transform a personal conflict into an issue of public concern simply by arguing that individual concerns might have been of interest to the public under different circumstances." *Markos*, 364 F.2d at 570 (citing *Bradshaw v. Pittsburg Ind. Sch. Dist.*, 207 F.3d 814, 816 (5th Cir. 2000)) (citations omitted). "If the nature of the speech is purely private, such as a dispute over one employee's job performance, a nontenured school teacher enjoys no first amendment protection as to that speech." *Kirkland v. Northside Ind. Sch. Dist.*, 890 F.2d 794, 799 (5th Cir. 1989) (citing *Connick*, 461 U.S. at 146.)

"Matters of public concern are those which can be fairly considered as relating to any matter of political, social, or other concern to the community." *Alexander*, 392 F.3d at 142 (quoting *Branton v. City of Dallas*, 272 F.3d 730, 739 (5th Cir. 2001) (quoting *Connick*, 461 U.S. at 146) (internal quotations omitted) "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Markos*, 364 F.3d at 570 (citing *Connick*, 461 U.S. at 147-48; *Tompkins*, 26 F.3d at 606.) "These factors should be considered as a package, and their significance will differ depending on the circumstances of the particular situation." *Markos*, 364 F.3d at 570 (citing *Teague v. City of Flower Mound*, 179 F.3d 377, 381 (5th Cir. 1999) (citing *Moore v. City of Kilgore*, 877 F.2d 364, 370 (5th Cir. 1989)).

Plaintiff must precisely identify the speech as to which he claims First Amendment protection, so that the Court may evaluate the content, form, and context of that speech. *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 342 (5th Cir. 2003). He "is required to be specific as to when [his] statement or statements were made, to whom they were made, whether they were oral or written, and the content of those statements." *Id.* Plaintiff cannot overcome the defense of qualified

immunity if he fails to provide such information.  *Id.*

### 2.   Speech with Hispanic Parents Regarding the Treatment of Hispanic Students

Plaintiff alleges in his complaint that he "was retaliated against for speaking out against the ill-treatment of the Hispanic students[.]"   (Compl. at 2.)   Plaintiff appears to allege that both Blacknall and Cook retaliated against him based on his speech regarding the treatment of Hispanic students, and that such speech was directed to the parents of Hispanic students.[7]   (Pl. Br. at 2-5.) Plaintiff's summary judgment response lists several topics he claims to have spoken to the parents about, including: (1) a lack of support from the District; (2) the low quality of education provided to the bilingual students (3) the deficient District curriculum; (4) unwise spending of bilingual funding; (5) failure to provide necessary textbooks; (6) abuses of bilingual students by other teachers; and (7)  the District's failure to follow state bilingual guidelines.  *Id.*  The Court construes such topics as encompassed within the claim in Plaintiff's complaint that he spoke out against ill-treatment of Hispanic students.[8]

To determine whether Plaintiff's alleged speech addresses matters of public concern, the Court evaluates the content, form, and context of that speech.  *See Markos*, 364 F.3d at 570.  With respect to Plaintiff's allegations regarding his speech about the treatment of Hispanic students, the detail Plaintiff provides is limited to his bare allegations about the speech, as set forth in his

---

[7]He further asserts that the Board of Trustees of the District violated his First Amendment rights by terminating him based on such speech.  (Pl. Br. at 5.)

[8]Plaintiff also alleges that he spoke with "Hispanic parents about the principal's lack of respect and sensitivity towards the parents and the Hispanic culture."  (Pl. Br. at 3.)  Such a topic appears to deal more with treatment of parents rather than students, and thus is not encompassed by the claim in his complaint that he spoke out against the ill-treatment of students.  Because Plaintiff failed to raise this claim in his complaint or Rule 7(a) Reply, the claim is not properly before the Court.  *See Cutrera v. Bd. of Supervisors of La. State Univ.*, --- F.3d ----, 2005 WL 2659978, at *5 (5th Cir. 2005) (citing  *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990)) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.").  However, even if Plaintiff had properly alleged such a complaint, it would fail for the same reasons Plaintiff's claim regarding his speech about the treatment of Hispanic children fails.

complaint and summary judgment response, and three affidavits of parents of his students.[9]  Those

affidavits contain the identical statement that Plaintiff "was the only teacher that was making us

aware of this [that the District was not serving the needs of the bilingual students, including the

Hispanic community in the P.T.A.s, or using state and federal funds for bilingual students]."  (Pl.

App. at 96; 101; 108).

Based on this minimal level of information, the Court finds that Plaintiff has failed to satisfy

his burden to show that the content, form, and context of his speech indicate that he spoke on a

matter of public concern.  *Foley*, 355 F.3d at 342.  Liberally construing his claims, it appears that

Plaintiff may be raising the issue of discrimination against Hispanic students.  Such content

generally would be held to address a matter of public concern.  *See, e.g., Connick,* 461 U.S. 138, 148

n.8 (1983) ("racial discrimination [is] a matter inherently of public concern"); *Victor v. McElveen*,

150 F.3d 451, 456 (5th Cir. 1998) ("The content of [the plaintiff's] speech was inherently of public

concern because it was a protest against racial discrimination.").  However, even allegations of racial

discrimination will not support a finding that speech is on a matter of public concern where, as here,

the allegations are lacking in detail.  *Foley*, 355 F.3d at 342.

In addition, while Plaintiff's summary judgment response and the parents' affidavits

generally imply that Plaintiff spoke with Hispanic parents, he does not specify where or when this

speech took place.  With respect to the context of such speech, Plaintiff also provides few details.

However, all the dates referred to in the parents' affidavits–indicating when they brought their

concerns to Blacknall, Cook, and the Board–indicate that such activity took place only *after* Plaintiff

---

[9]While Plaintiff points to five affidavits by parents of his students, only three of those affidavits identify the content of Plaintiff's speech to them.  A fourth affidavit refers generally to Plaintiff's speech; the affidavit states that "I believe that [Plaintiff] was retaliated against by the [District] and [Blacknall] because [Plaintiff] spoke out in behalf of the Hispanic Community and the Hispanic students at Acton Elementary."  (Pl. App. at 104.)  The fifth affidavit makes no mention of Plaintiff's speech.  *Id*. 110-113.

found out that his contract would not be renewed.  Significantly, he has not alleged that he engaged

in any protected speech *prior* to Blacknall's recommendation on March 28, 2003 that the Board not

renew his contract, or the Board's decision on March 31, 2003 adopting that recommendation.

Where all allegedly protected speech occurs subsequent to a plaintiff's receipt of news

regarding an adverse employment action, the context of such speech weighs against a finding that

the speech is protected.  For example, in *Bradshaw v. Pittsburg Independent School District*, 207

F.3d 814, 818 (5th Cir. 2000), the Fifth Circuit examined a principal's claim that she was fired in

retaliation for exercising her First Amendment rights, based on several memoranda to the

superintendent written after she found out that she would be reassigned; those memoranda requested

buy-outs of her contract, and also discussed a controversy regarding a school activities fund.  Based

on the context in which the memoranda were written–*after* the decision was made and

communicated with respect to her reassignment–the Fifth Circuit observed that the plaintiff's

"'speech' is more akin to a personal grievance rather than a matter of public concern."  *Id.*  Citing

the Supreme Court's principle articulated in *Mt. Healthy*, the Fifth Circuit stated that:

> employees already involved in a potentially adverse employment decision cannot
> engage in actions usually protected by the First Amendment in an attempt to frustrate
> the employment decision.  Such a rule would place the employee "in a better position
> as a result of constitutionally protected conduct than he would have occupied had he
> done nothing."

*Id.* (quoting *Mt. Healthy*, 429 U.S. at 285.)  In *Kirkland v. Northside Independent School District*,

the Fifth Circuit observed that the plaintiff had remained silent regarding what he referred to as the

school's "brutal censorship" until he learned that he would not be rehired.  890 F.2d at 800.  The

Fifth Circuit noted that "while an employee need not publicly announce a matter of general concern

in protest, and may use private channels instead, he cannot remain mute and thereafter self-servingly

label his conduct to be a matter of public concern."  *Id.* at 800 (citations omitted).

Like the plaintiffs in *Bradshaw* and *Kirkland*, Plaintiff has not alleged that he engaged in protective speech until after he found out that his contract would not be renewed.  Under such circumstances, Plaintiff's speech appears to be more in the nature of a personal grievance than an expression of public concern.  *See Bradshaw*, 207 F.3d at 818.

In addition, because Plaintiff has failed to point to any evidence that the allegedly protected speech occurred *prior* to Blacknall's decision to recommend that he not be rehired, Plaintiff fails to raise an issue of material fact with respect to his claim that Blacknall retaliated against him in violation of his First Amendment rights by recommending that his contract not be renewed.  Clearly, she could not retaliate against him based on speech which had not yet occurred.  *See, e.g., Finch v. Fort Bend Ind. Sch. Dist.*, 333 F.3d 555, 564 (5th Cir. 2003) ("Some of these alleged violations of associational rights occurred after [plaintiff] was reassigned.  It is untenable to argue [plaintiff's] reassignment was taken in retaliation for such associations."); *Kline v. N. Tex. State Univ.*, 782 F.2d 1228, 1233 n.5 (5th Cir. 1986) (noting as a substantial flaw in the plaintiff's First Amendment retaliation claim the fact that his allegedly protected speech did not occur until after his dismissal, and that he could not have been dismissed in retaliation for speech that had not yet occurred).

Viewing the evidence in the light most favorable to Plaintiff, the Court concludes that Plaintiff has failed to raise a fact issue as to whether Blacknall and Cook retaliated against Plaintiff because of his speech about the treatment of Hispanic children at Acton.  Thus, Blacknall and Cook are entitled to qualified immunity on Plaintiff's claim that he was retaliated against based on his speech in violation of the First Amendment.  Accordingly, summary judgment will be GRANTED for Blacknall and Cook in their individual capacities on this claim.

### 3.      Helping Parents Communicate with the School Board

In his complaint, Plaintiff alleges that he was retaliated against for "helping the Hispanic

13

parents voice their concerns with the School Board about the mis-treatment of their children." (Compl. at 2.)  Plaintiff also provides few details regarding this claim.  Plaintiff's summary judgment response states that "he tried to explain the Hispanic parents concerns to Dr. Cook, and the Board of Trustees at the April 14, 2003 meeting.  Plaintiff and the Hispanic parents were sent away because the Board of Trustees didn't have a Spanish translator."  (Pl. Br. at 4.)  Plaintiff also asserts that he attempted to speak at the Board meeting on May 19, 2003.  (Rule 7(a) Reply at 31-32.)  Finally, Plaintiff references the affidavits of his students' parents.  (*See* Pl. App. at 94-113.)

Plaintiff fails to identify precisely the content, form, and context of the alleged speech; in fact, it is not clear from the description of his claim whether he actually spoke before the Board. Thus, he cannot establish that his speech, if any, was on a matter of public concern, nor can he overcome Cook's claim to qualified immunity.[10]  *Foley*, 355 F.3d at 342.  In addition, the few details Plaintiff has provided with respect to this claim indicate that he did not attempt to help the Hispanic parents address the school board until *after* he found out that Blacknall recommended the nonrenewal of his contract, and that the Board adopted that recommendation.  In fact, none of the parents' affidavits mention any attempts to communicate with the school board prior to April 14, 2003.  Because he has not alleged that any of his speech occurred prior to the decision not to renew his contract, Plaintiff cannot show that such a decision was in retaliation for such speech.[11]  *See, e.g.,*

---

[10]Plaintiff does not specify against whom he alleges this claim.  However, he only mentions Cook in connection with this claim, and could not plausibly bring such a claim against Blacknall.

[11]Plaintiff cites *Tompkins v. Vickers*, 26 F.3d 603 (5th Cir. 1994), in support of his assertion that he had a right to speak with the Hispanic parents about matters of public concern.  (Pl. Br. At 4.)  Plaintiff's claim with respect to this speech fails because he has not precisely identified the form, content, and context of his speech, which prevents the Court from determining whether he spoke out on a matter of public concern.  To the extent that Plaintiff did identify the context of the speech, Plaintiff has shown that it did not occur until after he was informed that his contract would not be renewed; thus, he could not show that he was retaliated against on the basis of that speech.  In contrast, the plaintiff in *Tompkins* provided specific details about the form, content, and context of his allegedly protected speech, and showed that it occurred prior to his reassignment.  26 F.3d at 605-07.

*Finch,* 333 F.3d at 564; *Kline,* 782 F.2d at 1233 n.5.

Plaintiff also appears to allege a separate First Amendment claim with respect to the May 19, 2003 Board meeting.  In his Rule 7(a) reply, Plaintiff asserts that "Dr. Cook failed to let the Hispanic parents and Plaintiff express their fear and concerns at the. . . board meeting (on May 19, 2003)[.]"  (Rule 7(a) Reply at 31-32; Pl. App. at 131.)  While Plaintiff labels this a due process claim, the Court construes it as a First Amendment claim that he was denied the right to speak at that Board meeting.

Plaintiff asserts that Cook told Plaintiff and the Hispanic parents that they could not speak at the May 19, 2003 meeting because they were late and had failed to fill out a card; Plaintiff argues that because the parents were seated when the prayer was said, they were not late.  (Rule 7(a) Reply at 31-32.)  While Plaintiff disputes Cook's assertion that Plaintiff and the parents were late, he does not assert that he filled out a card or otherwise complied with procedural requirements for speaking at the Board's meeting.  In a public forum such as a school board meeting, the board may "enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication."  *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45 (1983) (citations omitted).  A requirement that all speakers sign up in advance is a reasonable, content-neutral restriction that does not infringe on Plaintiff's First Amendment rights.  *See Bach v. Sch. Bd. of City of Virginia Beach*, 139 F. Supp. 2d 738, 741 (E.D. Va. 2001) ("The parties agree that the School Board may properly impose such reasonable restrictions [signing up prior to the meeting] without implicating a First Amendment right.").  Thus, to the extent that Plaintiff has alleged a First Amendment claim with respect to his assertion that he was not allowed to speak at the May 19, 2003 Board meeting, the few details Plaintiff has provided with respect to this claim do not demonstrate

that Cook violated Plaintiff's First Amendment rights.

Thus, viewing the evidence in the light most favorable to Plaintiff, the Court concludes that Plaintiff has failed to raise a fact issue as to whether Cook retaliated against Plaintiff because he helped the parents of his students attempt to talk to the school board. Cook is entitled to qualified immunity on Plaintiff's claims that he was retaliated against based on his attempts to speak at the Board meetings and barred from speaking at one of those meetings, in violation of the First Amendment. Accordingly, summary judgment will be GRANTED for Cook in his individual capacity on this claim.

### 4.      Speaking With Other Bilingual Teachers

Plaintiff alleges that he "was accused of speaking too much with other bilingual teachers[.]" (Compl. at 3.) Plaintiff's summary judgment response indicates that, by this allegation, he intends to allege a First Amendment retaliation claim, but his filings do not clarify whether this allegation centers on a freedom of speech or a freedom of association claim. Thus, in an abundance of caution, the Court liberally construes Plaintiff's claim as alleging both.

The only support Plaintiff provides with respect to this claim, other than his bare assertions, are two affidavits written by other bilingual teachers. (Pl. Resp. App. at 114-119.) One of those affidavits consists primarily of a letter[12] submitted separately with Plaintiff's Rule 7(a) Reply. (Rule 7(a) Reply App., Exh. O3 at 36.) That teacher's letter states that the author never disturbed Plaintiff's class to speak with him, nor had Plaintiff ever neglected his classes to speak with her. (Pl. Resp. App. at 118.) The letter provides no information about the content of the speech. The

---

[12]As noted, Plaintiff did not mention this claim in his Rule 7(a) reply. Rather, he cited this letter in his Rule 7(a) Reply in support of his claim that his "past performance as a Bilingual educator has been at the highest level that could be attained. Plaintiff has been highly recommended by principals and teachers." (Rule 7(a) Reply at 14.)

other teacher's affidavit also states that she only spoke with Plaintiff during non-instructional time.[13]

*Id.* at 115.   The affidavit explains that the teacher spoke with Plaintiff because their students were from the same families, but provides no other information about the content of their speech.   *Id.* Plaintiff provides no additional details regarding this claim.

First, the Court examines whether Plaintiff has established that Blacknall violated his freedom of speech.[14]   In order to do so, the Court must evaluate the content, form, and context of his alleged speech to determine whether it addresses a matter of public concern.   *See Markos*, 364 F.3d at 570.   However, the information Plaintiff provides in support of his claim does not precisely indicate the content, form, or context of such speech.   Because Plaintiff fails to precisely identify the content, form, and context of the alleged speech, Plaintiff cannot establish that this speech addressed matters of public concern, nor can he overcome Blacknall's claim to qualified immunity. *Foley*, 355 F.3d at 342.   Plaintiff therefore has failed to establish that Blacknall violated his First Amendment freedom of speech.

Next, the Court examines whether Plaintiff has established that Blacknall violated his First Amendment right to freedom of association.   Supreme Court jurisprudence refers to two types of constitutionally protected freedom of association:

> In one line of decisions, the [Supreme] Court has concluded that choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme. . . .

*Roberts v. U.S. Jaycees*, 468 U.S. 609, 617-18 (1984).   This line of decisions, addressing "intimate

---

[13]Plaintiff's evidence, in which both teachers state that they did not speak to him during instructional time, appears to address a direction that he not speak with bilingual teachers during school hours when his duties as a teacher mandated that he focus on his students rather than a complete prohibition on speaking with the teachers.

[14]Plaintiff does not specify against whom he alleges this claim.   However, he only mentions Blacknall in connection with this claim, and could not plausibly bring such a claim against Cook.

associations," encompasses relationships such as marital and other close familial relationships.  *See Kipps v. Caillier*, 205 F.3d 203, 205 (5th Cir. 2000).  The second line of decisions addresses "associational rights," in which "the [Supreme] Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment--speech, assembly, petition for the redress of grievances, and the exercise of religion."  *Roberts* , 468 U.S. at 618.

The few details Plaintiff provides regarding this claim do not implicate either type of freedom of association.  Relationships with colleagues ordinarily are not afforded protection as intimate associations.  *See, e.g. Swanson v. City of Bruce, Miss*., 105 Fed. Appx. 540, 542 (5th Cir. 2004) (finding that despite "tight fellowship" among police officers, such relationships did not constitute intimate relationships for purpose of freedom of association analysis).  As discussed above, Plaintiff has not alleged that the content of his discussions with his fellow teachers centered on matters of public concern.  Thus, he has not demonstrated that he associated with the teachers for the purpose of engaging in speech protected by the First Amendment.  Plaintiff also has not mentioned that he talked to those teachers for the purpose of engaging in any other activities protected by the First Amendment, such as the exercise of religion.  Plaintiff therefore has failed to establish that Blacknall violated his First Amendment freedom of association.

In sum, viewing the evidence in the light most favorable to Plaintiff, the Court concludes that Plaintiff has failed to raise a fact issue as to whether Blacknall retaliated against Plaintiff because of his speech or association with bilingual teachers at Acton.  Thus, the Court concludes that Blacknall is entitled to qualified immunity on Plaintiff's claim that he was retaliated against in violation of the First Amendment based on his speech with bilingual teachers.  Accordingly, summary judgment will be GRANTED for Blacknall in her individual capacity on this claim.

### 5.      Teaching in Spanish

Plaintiff alleges in his Rule 7(a) reply that Blacknall violated his "right of freedom of speech under the I Amendment of the U.S. Constitution by refusing [sic] Plaintiff to teach in Spanish."[15] (Rule 7(a) Reply at 18-19.)  In support of this claim, Plaintiff points to four items.  The first two are pages from the Commissioner's Rules Concerning State Plan for Educating Limited English Proficient Students, in Chapter 89 of the Texas Administrative Code.  The first page, setting forth the policy of the rules, sets forth several goals, including "development of literacy and academic skills in the primary language and English."  (Rule 7(a) Reply App., Exh. R1 at 42.)  The other page, describing program content and design, provides that students should be instructed both in English and their home language.  (Rule 7(a) Reply App., Exh. R2 at 43.)  The third item is an excerpt of what appears to be a letter from Defendants' attorneys to the Executive Director of the Texas State Board of Educator Certification, written in response to a complaint filed by Plaintiff.  (Rule 7(a) Reply App., Exh. R3 at 44.)  The letter states that

> there is no ethical violation in the instructional leader of a campus telling a bilingual teacher to teach English to his students and to stop his reliance on Spanish language handouts.  Teaching students more Spanish and using Spanish language handouts, rather than using Spanish to teach students English so that they can be integrated into English-speaking classrooms, is bad teaching. . .

*Id.*  Fourth, Plaintiff includes a list of state-adopted textbooks.  (Rule 7(a) Reply App., Exh. R4 at 45.)  Plaintiff's Rule 7(a) reply also includes a letter, addressed to Blacknall and dated November 1, 2002, that appears to respond to her directive that he follow the District curriculum by using more English and less Spanish in the classroom.  (Rule 7(a) Reply App., Exh. S2 at 47.)  In the letter, he states that he is confused about how to properly allocate time to teaching in Spanish and English to

---

[15]In connection with this claim, Plaintiff also alleges violations of his "rights of due process of law [and] liberty to teach [] under the XIV Amendment[.]" (Rule 7(a) Reply at 18-19).  The "liberty to teach" claim will be addressed below.

19

a heterogeneous group of Limited English Proficiency (LEP) and non-LEP students.[16]  *Id.*

Based on those documents, Plaintiff's claim appears to address a dispute over whether he was following the school district's bilingual curriculum by properly allocating classroom time to instruction in English and Spanish, rather than a blanket refusal by Blacknall to allow him to teach in Spanish.  (Rule 7(a) Reply at 17-18; Rule 7(a) Reply App., Exh. W9 at 64.)  The Fifth Circuit addressed a curricular dispute framed as a freedom of speech issue by the plaintiff in *Kirkland v. Northside Independent School District.*  890 F.2d at 802.  In *Kirkland*, a history teacher whose contract was not renewed argued that he was terminated in violation of the First Amendment for using his own reading list.  *Id.* at 795.  The Fifth Circuit found that the plaintiff presented a dispute about the curriculum, not a matter of public concern.  *Id.* at 800.  The Fifth Circuit noted that "[a]lthough[] the concept of academic freedom has been recognized in our jurisprudence, the doctrine has never conferred upon teachers the control of public school curricula."  *Id.* (citing *Lovelace v. Se. Mass. Univ.*, 793 F.2d 419, 426 (1st Cir. 1986); *Hillis v. Stephen F. Austin State Univ.*, 665 F.2d 547, 552- 53 (5th Cir. 1982); *Palmer v. Bd. of Educ. of City of Chicago*, 603 F.2d 1271, 1273 (7th Cir. 1979) (holding that the First Amendment does not authorize a teacher to exercise unfettered control over the content and structure of instruction); *Hetrick v. Martin*, 480 F.2d 705, 709 (6th Cir. 1973) (rejecting former professor's first amendment claim that university would not rehire teacher because it disagreed with her pedagogical approach).  The Fifth Circuit stated:

> We hold only that public school teachers are not free, under the first amendment, to arrogate control of curricula.  Parents, administrators, and elected officials also have a legitimate role in the process of selecting material that will advance educational

---

[16] According to documents provided by Plaintiff, the District's Bilingual/ESL Instructional Model is "based on a heterogeneous grouping of LEP students and Non-LEP students."  (Pl. App., Exh. E. at 237.)  The model calls for first grade teachers to allocate 40% of instructional time to Spanish and 60% to English for Spanish dominant students, and to allocate 10-20% of instructional time to Spanish and 80-90% to  English for English dominant LEP students.  *Id.*

goals, a role that cannot lightly be assumed by teachers alone.

*Kirkland*, 890 F.2d at 802.

Like the plaintiff in *Kirkland*, Plaintiff appears to frame a curriculum dispute as a First Amendment claim. The limited information Plaintiff provides about the content, form, and context of his speech all relates to classroom instruction. Thus, the Court finds that Plaintiff has failed to present a matter of public concern with respect to his claim that Blacknall did not allow him to teach in Spanish, as such claim actually presents an employment dispute over the District bilingual curriculum. *Id.* (concluding that plaintiff's claim with respect to the reading list presented an employment dispute, not a matter of public concern, and finding that the district court erred in finding that the plaintiff suffered a constitutional injury).

Accordingly, viewing the evidence in the light most favorable to Plaintiff, the Court concludes that Plaintiff has failed to raise a fact issue as to whether Blacknall violated his freedom of speech in violation of the First Amendment by directing him to follow the District's bilingual curriculum. Thus, the Court concludes that Blacknall is entitled to qualified immunity on this claim, and summary judgment will be GRANTED for Blacknall in her individual capacity on this claim.

### 6.      Reporting of TAKS Irregularities

Plaintiff alleges in his summary judgment response that he was terminated because he filed a report with the Texas Education Agency based on his alleged observation of staff members helping students cheat on the Texas Assessment of Knowledge and Skills ("TAKS") test. (Pl. Resp. at 18; Pl. Br. at 5.) As Blacknall and Cook observe in their reply, this claim was not raised either in Plaintiff's complaint or Rule 7(a) reply. (MSJ Reply at 13 n.4.) Because Plaintiff failed to raise this claim in his complaint or Rule 7(a) Reply, the claim is not properly before the Court. *See Cutrera v. Bd. of Supervisors of La. State Univ.*, --- F.3d ----, 2005 WL 2659978, at *5 (5th Cir. 2005) (citing

*Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir.1990)) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.")  However, even if properly raised, this claim would fail.

Plaintiff's only  support for this claim is a copy of a handwritten letter, addressed to the Texas Education Agency and dated April 3, 2003, alleging that he observed a colleague help her students on the TAKS exam.[17]  (Pl. App. at 120.)  The content and form of the letter, making a public allegation of irregularities in the administration of a high-stakes standardized test, weighs in favor of finding that such speech addresses a matter of public concern.  However, Plaintiff wrote the letter only after he found out his contract would not be renewed.  Thus, the context of such speech suggests that Plaintiff's reporting of the irregularities was more in the nature of a personal grievance than an expression of public concern.  Also fatal to Plaintiff's claim is that the reporting did not occur until after Board decided not to renew his contract, and therefore could not have motivated that decision.  *Finch*, 333 F.3d at 564; *Kline*, 782 F.2d at 1233 n.5.

Viewing the evidence in the light most favorable to Plaintiff, the Court concludes that even if he had properly raised the claim with respect to his reporting of TAKS irregularities, Plaintiff has failed to raise a fact issue as to whether Blacknall and Cook[18] retaliated against Plaintiff in violation of the First Amendment.[19]  Even if Plaintiff had properly raised this claim,  the Court concludes that Blacknall and Cook are entitled to qualified immunity on his claim that he was retaliated against in violation of the First Amendment based on his reporting of TAKS irregularities.   Accordingly,

---

[17]Plaintiff furnishes no evidence that he actually sent the letter.

[18]Plaintiff did not specify against which defendant he alleges this claim.

[19]Plaintiff alleges that he was terminated for reporting TAKS irregularities in violation of his Fourteenth Amendment rights.  However, such a claim could not plausibly be brought pursuant to the Fourteenth Amendment, and the Court therefore construes this as a First Amendment claim.

summary judgment will be GRANTED for Blacknall and Cook in their individual capacities on this claim.

### 7.      First Amendment Claims Summary

In sum, the evidence, when construed in the light most favorable to Plaintiff, demonstrates none of his First Amendment constitutional rights were violated.  Accordingly, the Court need not consider whether Plaintiff's alleged speech was a motivating factor in the decision not to renew his contract.  S*ee Kirkland*, 890 F.2d at 799-800.  The Court notes, however, that because most of the allegedly protected speech occurred only after the decision not to renew his contract, Plaintiff could not make a showing that his speech motivated Blacknall and Cook's conduct.  The Court also need not address Blacknall and Cook's argument that, even if the Court found that any constitutional violations occurred, they are entitled to qualified immunity because their conduct was objectively reasonable.  *See Finch*, 333 F.3d at 564-65.

### B.      Fourteenth Amendment Claims

Plaintiff's complaint, Rule 7(a) reply, and summary judgment response set forth a multitude of claims based on alleged violations of his right to due process as well as his liberty to pursue a profession and to contract.  Plaintiff also makes several vague references to equal protection violations.  The threshold question in the qualified immunity analysis here is whether, assuming the facts alleged by Plaintiff are true, Blacknall and Cook's conduct violated the Fourteenth Amendment.[20]

---

[20]Plaintiff does not specifically point to the Fourteenth Amendment as the basis for all his due process claims.  However, none of his due process claims could be brought pursuant to the Fifth Amendment.  Such causes relate only to actions by the federal government, and Plaintiff has not raised any claims involving federal action. *See, e.g., Hankins v. Dallas Ind. Sch. Dist.*, 698 F. Supp. 1323, 1326 (N.D. Tex. 1988) (citing *Rutherford v. United States*, 702 F.2d 582 n.4 (5th Cir. 1983)); *Staheli v. Univ. of Miss.*, 621 F. Supp. 449, 452 (D.C. Miss. 1985) (citing *Rutherford*, 702 F.2d at 582 n.4; *Guthrie v. Ala. By-Products Co.*, 328 F.Supp. 1140, 1143 (N.D. Ala. 1971)).

1.      **Fourteenth Amendment Standard**

"The due process clause of the 14th Amendment protects citizens from acts of government that 'deprive any person of life, liberty or property, without due process of law[.]'"   *Woodard v. Andrus*, 419 F.3d 348 (5th Cir. 2005) (citing U.S. Const. amend. XIV, § 1; *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).   "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law."   *Zinermon v. Burch*, 494 U.S. 113, 125-26 (1990) (citing *Parratt v. Taylor*, 451 U.S. 527, 537 (1981); *Carey v. Piphus*, 435 U.S. 247, 259 (1978) ("Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property")).

To establish entitlement to due process under the Fourteenth Amendment, a plaintiff must show that (1) a state actor (2) deprived (3) a person (4) of a constitutionally protected liberty or property interest.   *Tex. Faculty Ass'n v. Univ. of Tex. at Dallas*, 946 F.2d 379, 383 (5th Cir. 1991). *See also Roth*, 408 U.S. at 570 ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."); *Doe v. Taylor Ind. School Dist.*, 15 F.3d 443, 450 (5th Cir.1994) ("To state a cause of action under § 1983 for violation of the Due Process Clause, plaintiffs "must show that they have asserted a recognized 'liberty or property' interest within the purview of the Fourteenth Amendment, and that they were intentionally or recklessly deprived of that interest, even temporarily, under color of state law.") (quoting *Griffith v. Johnston,* 899 F.2d 1427, 1435 (5th Cir. 1990)); *Burris v. Willis Ind. Sch. Dist.*, 713 F.2d 1087, 1090 (1983).

Prior to examining Plaintiff's due process claims, the Court must first determine whether the interest Plaintiff alleges he was deprived of constitutes a protected life, liberty, or property interest

under the Fourteenth Amendment.  *See Burris*, 713 F.2d at 1090 (stating that the court must "first determine whether the interest alleged to have been infringed amounts to 'life, liberty, or property'" under the Fourteenth Amendment prior to passing on a due process claim).   Plaintiff, who is proceeding *pro se*, raises a number of due process claims without citation to a specific property or liberty deprivation, such as when he asserts that Blacknall "violated Plaintiff's right of due process of law by lying that Plaintiff came in late and left early."  *Id.* at 22-23.   Because Plaintiff is proceeding *pro se*, the Court must liberally construe his pleadings.  *Hurd v. Doe*, 2003 WL 21640569, at *3 (N.D. Tex. July 10, 2003) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).   Thus, the Court begins its analysis of Plaintiff's Fourteenth Amendment claims by examining those due process claims he alleges in connection with specific liberty interest claims, and any of his more general due process claims that appear to arise in the context of those claims.  *See, e.g., Cook v. Bd. of Supervisors of Lowndes County, Miss.*, 806 F. Supp. 610, 614 n.3 (N.D. Miss. 1992) (evaluating plaintiff's vague due process claims as an alleged deprivation of property interest, where no plausible argument of deprivation of life or liberty available under facts presented).

### 2.      Liberty to Engage in Practice of Chosen Profession

Construing Plaintiff's Rule 7(a) reply broadly, he appears to assert that Blacknall and Cook violated his right to engage in the profession of teaching by recommending that his contract be terminated.  (Rule 7(a) Reply at 1-2.)  Plaintiff also asserts that Blacknall violated his liberty to pursue his profession as a teacher in the following ways: (1) "denying him his rights under his contract[;]" (2) providing an inaccurate, defective appraisal based on her opinion; (3)  "impeding and interfering with Plaintiff's right to serve the needs of the bilingual students[;]" (4) "interfering with the General Guidelines for Bilingual/ESL Team Teaching given to Plaintiff to follow by

Duncanville School District[;]" (5) lying that the school was fined because he placed furniture in front of his classroom door; and (6) accusing him of filing a false fire marshal report. (Compl. at 2; Rule 7(a) Reply at 7-22.) Plaintiff contends that Cook violated his liberty to engage in the practice of his profession by: (1) filing a[n] untimely and false report against Plaintiff with the Texas State Board of Education Certification[]" and (2) " telling three parents. . .that Plaintiff disclosed 'confidential student records to an outside party[]'" rather than allowing Plaintiff an opportunity to "present his side." (Rule 7(a) Reply at 23-31.) Plaintiff also alleges in his complaint that he was accused of attempting to incite parents and students and harmed through a fraudulent note, although he does not identify the alleged actor. (Compl. at 3.)

The Supreme Court has held that a person has a liberty interest in the pursuit of a profession. *Bd. of Regents v. Roth*, 408 U.S. 564, 573 (1972); *Meyer v. Nebraska,* 262 U.S. 390, 399 (1923). In a number of cases, the Fifth Circuit has also acknowledged an individual's liberty interest in pursuing an occupation. *See, e.g., Cowan v. Corley*, 814 F.2d 223, 228 (5th Cir. 1987) (citing *Ferrell v. Dallas Ind. Sch. Dist*., 392 F.2d 697, 707 (5th Cir.1968); *Shaw v. Hosp. Auth*., 507 F.2d 625, 628 (5th Cir.1975); *Daly v. Sprague*, 675 F.2d 716, 727 (5th Cir.1982)). However, the Fifth Circuit noted in *Cowan* that "the right to engage in the occupation of one's preference is not absolute." 814 F.2d at 228. "Within the strictures of due process both property and liberty interests may be constrained." *Id*.

To prevail on a § 1983 claim that the Blacknall or Cook infringed upon a cognizable liberty interest, Plaintiff must demonstrate the following:

> (1) that [he] was discharged; (2) that stigmatizing charges were made against [him] in connection with the discharge; (3) that the charges were false; (4) that [he] was not provided notice or an opportunity to be heard prior to her discharge; (5) that the charges were made public; (6) that [he] requested a hearing to clear [his] name; and (7) that the employer refused [his] request for a hearing.

*Hughes v. City of Garland*, 204 F.3d 223, 226 (5th Cir. 2000) (citing *Rosenstein v. City of Dallas*, 876 F.2d 392, 395-96 (5th Cir. 1991); *Moore v. Miss. Valley State Univ.*, 871 F.2d 541, 549 (5th Cir. 1989). "[F]or a charge to be stigmatizing it must be worse than merely adverse; it must be such as would give rise to a badge of infamy, public scorn, or the like." *Wells v. Hico*., 736 F.2d at 256, n.16 (citing *Ball v. Bd. of Trustees of Kerrville Ind. Sch. Dist.*, 584 F.2d 684, 685 (5th Cir. 1978); *Burris*, 713 F.2d 1087 at 1092; *Huffstutler v. Bergland*, 607 F.2d 1090, 1092 (5th Cir. 1979); *LaBorde v. Franklin Parish Sch. Bd.*, 510 F.2d 590, 593 (5th Cir. 1975); *Robertson v. Rogers*, 679 F.2d 1090, 1092 (4th Cir. 1982); *Press v. Bd. of Regents*, 489 F. Supp. 150, 155 (M.D. Ga. 1980)) (internal quotations omitted). The stigma must rise to a level "that forecloses 'freedom to take advantage of other employment opportunities.'" *Wells v. Hico*., 736 F.2d 243, 256 (5th Cir. 1984) (quoting *Roth*, 408 U.S. at 573; citing *Wells v. Doland*, 711 F.2d 670, 676 (5th Cir. 1983)). Where a court finds that a plaintiff fails to produce evidence with respect to some of the elements of a liberty interest claim, the court need not examine each element. *Hughes*, 204 F.3d at 226-27.

Most of Plaintiff's claims regarding Blacknall and Cook's actions do not implicate a liberty interest in his pursuit of the profession of teaching because they do not impose the type of stigma required to establish such a claim. First, neither Blacknall nor Cook violated Plaintiff's liberty interest in pursuing a particular profession by recommending that his contract be terminated. The mere refusal to rehire an individual at the end of his contract term does not implicate a liberty interest, even if an employee proves that such nonrenewal makes him less attractive to other employers. *See Roth*, 408 U.S. at 573-574; *Wells v. Hico,* 736 F.2d at 256 (citing *Roth*, 408 U.S. at 574 n. 13 and *Dennis v. S. & S. Consol. Rural High Sch. Dist.*, 577 F.2d 338, 340 (5th Cir. 1978) (stating that not renewing a "a teacher's contract is not such a blight upon his good name, reputation, honor, or integrity as to constitute a deprivation of liberty.")). Likewise, Blacknall's alleged denial

of Plaintiff's claimed rights under his contract, such as the right to transfer to another school or teach

summer school within the District, do not impose a stigma.  Thus, such alleged denials, even if true,

do not implicate a liberty interest in the pursuit of the teaching profession.  Plaintiff's allegations

that Blacknall interfered with his ability to serve bilingual students, follow District ESL guidelines,

or teach in Spanish also do not impose a stigma, and thus do not implicate his liberty interest in the

occupation of teaching.  (Rule 7(a) Reply at 18-20.)

Plaintiff also alleges that Blacknall's violated his liberty interest in the pursuit of the

profession of teaching failure to provide him with an accurate appraisal under Texas' Professional

Development and Appraisal System ("PDAS").  Plaintiff asserts that the assessment "was neither

fair nor practical and was solely produced intentionally against Plaintiff, to discredit, dishonor, and

stain Plaintiff's highly commendable career as a professional Bilingual educator."  Plaintiff further

asserts that "[a] low scoring teacher appraisal can destroy a good teacher's career. . .[and] deny a

good teacher the opportunity to remain at his teaching location and make it very hard for a good

teacher to find employment[.]"  In his appendix, Plaintiff includes a copy of his Summative Annual

Appraisal.  A review of that Appraisal reveals that nothing contained therein, including the

comments, could be construed as giving rise to a "badge of infamy, scorn, or the like."  At best, the

Appraisal can be described as adverse, in that Plaintiff received nine marks of below proficient, out

of a total of 50 areas in which he was rated.  (Rule 7(a) Reply App. at 27-33.)  An appraisal that is

adverse, but not stigmatizing, does not implicate a liberty interest.  *See Hankins*, 698 F. Supp. at

1328 (finding no deprivation of a liberty interest where information in the plaintiff's personnel file

"did not reach the level of stigmatization as contemplated by *Campos*.").  Moreover, even if the

appraisal did contain stigmatizing information, Plaintiff has not established that the appraisal was

disclosed publicly, or in any other way made available to potential employers.  With respect to his

complaints about the manner in which Blacknall performed the PDAS assessment, only the content

of the assessment, and not the manner in which the assessment is performed could implicate the

analysis of his liberty to teach.  Accordingly, Plaintiff has failed to establish that Blacknall violated

his liberty interests in connection with any of his claims regarding his appraisal.

Next, the Court addresses Plaintiff's liberty interest claim with respect to his allegation that

Blacknall accused him of filing a false fire marshal report.[21]  (Rule 7(a) Reply at 21.)  In support of

this claim, Plaintiff provides a letter from Blacknall regarding the fire marshal's visit.  The letter

explains that the fire marshal asked Blacknall who may have made the complaint, and she stated that

she had a conversation with Plaintiff in which he stated that locked doors were a fire violation.  (Pl.

App. at 19.)  The letter does not actually accuse Plaintiff of filing a fire marshal report; at best, the

letter implies that Plaintiff made a report to the fire marshal on the basis of what Plaintiff perceived

to be a legitimate violation of fire codes.  The letter contains no information that could rise to a

"badge of infamy, scorn, or the like."   In addition, Plaintiff has not established that Blacknall

publicly accused him of filing a report.  Thus, Plaintiff has failed to establish that Blacknall violated

his liberty interests in connection with this claim.

Plaintiff also alleges that Blacknall violated his liberty interest by "lying about the school

being fined due to furniture placed in front of Plaintiff's classroom door."[22]  (Rule 7(a) Reply at 21-

22).  While such an accusation may come closer to constituting a charge rising to a level of scorn

---

[21]Plaintiff alleges only a due process violation in connection with this claim.  However, the Court construes it as a due process violation grounded in his liberty to pursue a profession, as it could not plausibly be grounded in an alleged deprivation of property.  *See, e.g., Cook*, 806 F. Supp. at 614 n.3.

[22]Plaintiff alleges only a bare due process violation in connection with this claim, without grounding it in the deprivation of a particular liberty or property interest.  However, the Court construes it as a due process violation grounded in his liberty to pursue a profession, as it could not plausibly be grounded in an alleged deprivation of property.  *See, e.g., Cook*, 806 F. Supp. at 614 n.3 (evaluating plaintiff's vague due process claims as an alleged deprivation of property interest, where no plausible argument of deprivation of life or liberty available under facts presented).

because of its implication that Plaintiff's action threatened student safety, Plaintiff has not established that the accusations were made public.  In fact, his Rule 7(a) reply establishes that the latter accusation was shielded from public disclosure.  Plaintiff states that Blacknall placed a notice of the fire marshal's report on a public bulletin board at Acton, but "deliberately omitted the paragraph where she lied about the school being fined due to Plaintiff's furniture.  No where did the Fire Marshal's Report even mention Plaintiff's name."  *Id*. at 22.  Plaintiff has therefore failed to demonstrate a liberty interest violation in connection with this claim.

Finally, Plaintiff contends that Cook violated Plaintiff's "constitutional rights of due process of law[] and liberty by filing a[n] untimely and false report against Plaintiff with the Texas State Board of Education Certification."  (Rule 7(a) Reply at 23-24.)  Specifically, Plaintiff contests the Cook's allegations that Plaintiff violated student confidentiality laws by disclosing confidential student records to the third party who represented him in grievance proceedings and by improperly tape-recording students' voices.  *Id*. at 24-25; 26-27.  Plaintiff also argues that Cook violated his liberty by stating in the letter that Plaintiff was terminated in part based on a determination that he had illegally transferred school property and committed a crime on school property by disclosing the records and recording the students' voices.[23]  *Id*. at 29.

An allegation that an individual violated the law by disclosing confidential student records clearly constitutes a serious and potentially stigmatizing charge.  Plaintiff vigorously contends that these allegations are false.  The Court need not determine whether the charges are, in fact, false, because Blacknall and Cook present evidence that Plaintiff was provided the opportunity for a name-clearing hearing.  Rather than have a hearing, Plaintiff signed an agreed final order before the State

---

[23]Plaintiff also argues that this action violated his liberty to contract.  However, as will be discussed below, such a claim is addressed more appropriately as a claim about his liberty to pursue his profession.

Board for Educator Certification ("SBEC") indicating that "[a] complaint was filed against Respondent, and he was provided with the opportunity to respond to the complaint and to show compliance with the law."[24] (MSJ App. at 232-33.)  Plaintiff acknowledges that he signed this order. (Pl. Resp. at 16.)  Because the evidence establishes that Plaintiff had an opportunity to clear his name with respect to the charges that he disclosed confidential student records, Plaintiff cannot establish that Cook violated Plaintiff's liberty to pursue his profession.

Plaintiff also alleges that Cook violated Plaintiff's "right to engage in the practice of his profession, and his right of liberty[,] by telling three parents. . .that Plaintiff disclosed 'confidential student records to an outside party[]'" rather than allowing Plaintiff an opportunity to "present his side." (Rule 7(a) Reply at 30-32.)  Cook's letter, dated June 23, 2003, was addressed to parents who had sent him a letter on June 2, 2003; both the parents' letter and Cook's response was also sent to several media outlets as well as the Hispanic Chamber of Commerce and LULAC, among others. (Rule 7(a) Reply App., Exh. MM at 130-31; MSJ App. at 72-73.)  The parents' letter criticizes Blacknall for removing Plaintiff from the classroom without telling them and placing a substitute in the classroom rather than a certified bilingual teacher.  (Rule 7(a) Reply App., Exh. MM at 130-31.)  Cook explains in his letter that he removed Plaintiff from Acton for the last week of classes because he disclosed confidential student records in violation of federal and state law during the grievance process and then violated students' confidentiality rights several days later in a different classroom. (MSJ App. at 72.)  As discussed above, such accusations are stigmatizing; clearly, they were made publicly.  Plaintiff nevertheless cannot establish that Cook's public accusations violated Plaintiff's liberty interests, as he received a name-clearing hearing with respect to those

---

[24]The order's findings of fact stated that Plaintiff "has conducted school or educational activities in violation of law pursuant to Title 19, Texas Administrative Code § 249.15(c)(1)."  (MSJ App. at 232-33.)

accusations.[25]

In sum, most of the actions Plaintiff alleges violated his liberty interest do not rise to the level of stigmatizing charges.  No public disclosure was made of one charge that could possibly rise to the level of creating a stigma.  Of the two claims raising issues with respect to stigmatizing charges, Plaintiff had an opportunity to clear his name, thus receiving the due process to which he was entitled.  Accordingly, viewing the evidence in the light most favorable to Plaintiff, the Court concludes that Plaintiff has failed to raise a fact issue as to whether Blacknall and Cook violated Plaintiff's liberty interest in pursuit of the profession of teaching in violation of the Fourteenth Amendment.  Thus, the Court concludes that Blacknall and Cook are entitled to qualified immunity on Plaintiff's claims that Blacknall and Cook violated his liberty interest in the pursuit of the profession of teaching.  Accordingly, summary judgment will be GRANTED for Blacknall and Cook in their individual capacities on these claims.

### 3.        Liberty to Contract

Plaintiff asserts that Blacknall and Cook and violated his right of liberty to contract by terminating his contract without good cause, and that Cook violated Plaintiff's liberty to contract by sending a report to the SBEC's Executive Director containing allegations that Plaintiff illegally transferred school property and violated confidentiality laws.  (Rule 7(a) Reply at 1-2; 29.)  Plaintiff points to *Meyer v. Nebraska* in support of his claim that his liberty to contract was violated.  (Rule 7(a) Reply at 1-2; Pl. Br. at 6.)

In *Meyer*, the plaintiff was convicted of violating a state statute prohibited the teaching of

---

[25]"Plaintiff signed the agreed final order on January 23, 2004, nearly eight months after Cook's May 20, 2003 report to the SBEC, and seven months after his letter to parents regarding those charges.  The Court notes that "[i]t is not necessary that the hearing occur prior to publication of the stigmatizing charges."  *Wells v. Hico*, 736 F.2d at 256, n.18 (citing *In re Selcraig*, 705 F.2d 789, 796 (5th Cir.1983)).

any language other than English, based on his having taught German to a student at a private school. 262 U.S. at 396-397. The Supreme Court reversed his conviction, finding that the state legislature's law unconstitutionally interfered with the plaintiff's right to teach German and the parents' right to contract with him to teach that language, in that the statute as applied was arbitrary and bore no reasonable relationship to a purpose within the legislature's competency. *Id.* at 399-400. The liberty to contract addressed in *Meyer* thus addressed a situation in which a state legislature exceeded its authority in passing a law restricting a teacher from providing instruction on a particular topic, where parents privately contracted for such instruction. Neither of Plaintiff's liberty of contract claims bear any apparent relationship to the liberty to contract concept addressed in *Meyer*.

First, Plaintiff's claim with respect to his contract relates to whether it was terminated in compliance with its terms; he alleges that the terms of his contract dictate that it could only be terminated for good cause, and that the "contract is very clear about the definition of what good cause is and what good cause entails." (Rule 7(a) Reply at 2.) Plaintiff's claim clearly does not relate to a state statute barring him from contracting as a teacher, as in *Meyer*. Rather, Plaintiff's claim amounts to a breach of contract claim. Alternatively, his claim could be construed as an alleged due process violation based on an allegedly protected property right to continued employment under the contract. Such a construction of this claim, however, fails, for the reasons discussed below.

Next, Plaintiff asserts that his liberty to contract was violated because he was denied employment with two other school districts due to the note on his teaching certificate indicating that he was under review by the SBEC Professional Discipline Unit. (Rule 7(a) Reply at 33.) Because Plaintiff is alleging that the disciplinary action initiated by Cook impaired Plaintiff's ability to find another teaching position, this claim is properly construed as an alleged violation of the liberty to

33

pursue a profession.  As discussed above, Plaintiff failed to establish a constitutional violation with respect to this claim, in part because he was provided with the opportunity to clear his name. Accordingly, he has stated no basis for relief with respect to this claim.

### 4.    Property Interest

As noted in the preceding section, the Court will addresses Plaintiff's due process claim with respect to his contract termination as one grounded in an alleged protected property interest rather than the inapplicable liberty of contract.  *See Cook*, 806 F. Supp. at 614 n.3.

"Whether a property interest exists must be determined by reference to state law." *Wells v. Hico Ind. Sch. Dist.*, 736 F.2d 243, 252 (5th Cir. 1984) (citing *Bishop v. Wood*, 426 U.S. 341, 344 (1976); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982)).  If the court finds that a property interest existed, the next step is to determine whether the plaintiff was afforded the due process required.  "The 'minimal' process set out by our cases applying *Eldridge* is notice of the reasons for a proposed deprivation and some opportunity to respond to the substance of the allegations before a final deprivation occurs." *Williams v. Tex. Tech Health Sci. Ctr.*, 6 F.3d 290, 293 (5th Cir. 1993) (citing *Eguia v. Tompkins*, 756 F.2d 1130, 1139 (5th Cir. 1985)).

The Texas Education Code specifically provides that "Texas public school teachers do not have a property interest in their employment beyond the term set by their employment contract." *Carey*, 996 F. Supp. at 651 (citing TEX. EDUC. CODE § 21.204(e)).  Thus, "[c]ourts applying Texas law have held that a teacher working under a probationary contract does not have a property interest in continued employment, as a matter of law." *Carey v. Aldine Ind. Sch. Dist.*, 996 F. Supp. 641, 651 (S.D. Tex. 1998) (citing *McCullough v. Lohn*, 483 F.2d 34, 34 (5th Cir. 1973)).

Plaintiff included with his Rule 7(a) reply a copy of his contract, entitled "Probationary Teacher Contract."  (Rule 7(a) Reply App., Exh. A at 1-2.)  Paragraph 10 of the contract provides

that:

> This is a probationary Contract. The Board may terminate this contract in accordance with state law and Board policy at the end of the Contract period set forth herein if, in the Board's judgement, the best interests of the District will be served by such termination.  The Board's decision is final and may not be appealed.

*Id*. at 2.  Texas state law provides that "[a] probationary contract may not be for a term exceeding one school year."  TEX. EDUC. CODE § 21.102(b)  Thus, Plaintiff was guaranteed employment for only one school year.  Plaintiff was not terminated during the school year; rather, the Board terminated his contract at the end of his probationary contract period.  (Rule 7(a) Reply, Exh. JJ at 84.)  Plaintiff does not dispute, and in fact presents evidence, that he was employed under a probationary contract that was terminated at the end of that contract period.  Because Plaintiff by law has no property interest in his contract beyond the end of its term, he was not deprived of any property interest by the termination of his contract, and was not entitled to due process as a matter of law under the Fourteenth Amendment.[26]  *See Carey*, 996 F. Supp. at 652 (finding no due process violation based on teacher's contract nonrenewal because teacher had no property interest in continued employment).  Thus, to the extent that Plaintiff argues that his due process was violated because he was not terminated for good cause, such claim fails because he has not established the existence of a property interest in continued employment entitling him to Fourteenth Amendment

---

[26]In Plaintiff's summary judgment response, he makes vague references to claims based on a contract implied in law.  Plaintiff did not properly raise these claims.  *See Cutrera*, 2005 WL 2659978, at *5.  Such claims would fail even if he had properly raised them.  Where a valid express contract fully addresses performance, a party may not seek recovery on the basis of a contract implied in law.  *See Jhaver v. Zapata Off-Shore Co.*, 903 F.2d 381, 385 n. 10 (5th Cir. 1990) ("'If a valid express contract covering the subject matter exists there can be no recovery upon a contract implied by law.'") (citing *Black Lake Pipe Line Co. v. Union Constr. Co.*, 538 S.W.2d 80, 86 (Tex.1976)); *U.S. for Use and Benefit of Straus Sys., Inc. v. Associated Indem. Co.*, 1991 WL 365064, at *3 (E.D. Tex. Apr. 30, 1991) ("the existence of a valid and express contract fully covering performance excludes the existence of a contract implied by law.") (citing *U.S. f/u/b/o Larkin v. Platt Const. Co.*, 306 F.2d 724 (1st Cir.1962)).  Plaintiff has provided the Court with a copy of his probationary contract, and has not challenged its validity.  In fact, he has not briefed these claims.  Accordingly, the Court finds that Plaintiff's implied in contract claims would fail, even if he had properly raised them.

due process protection.  Because Plaintiff has failed to create a fact issue with respect to his claim

that Blacknall and Cook violated Plaintiff's due process rights in connection with his contract

termination, the Court concludes that Blacknall and Cook are entitled to qualified immunity on this

claim.[27]   Accordingly, summary judgment will be GRANTED for Blacknall and Cook in their

individual capacities on this claim.

### 5. Due Process Claims Raised Without Reference to Particular Liberty or Property Interest

Plaintiff raises a number of due process claims against Blacknall and Cook without specific

reference to a particular property or liberty interest.  These claims include Plaintiff's contention that

Blacknall violated his right to due process by (1) failing to provide him with an intervention plan

on the date she informed him that she was recommending that his contract not be renewed; (2)

"misrepresenting that she had the authority not to renew Plaintiff's contract[;]" and (3) lying at the

Level II grievance hearing that Plaintiff came in late and left early and did not follow the

---

[27]In his summary judgment response, Plaintiff raises for the first time claims that his Fourteenth Amendment rights to "confront and cross-examine his secret accusers" and "examine all fact documents" presented in his grievance hearings were violated.  (Pl. Br. at 5, 12; Pl. Resp. at 6-7.)  As Blacknall and Cook observe in their reply, these claims were not raised either in Plaintiff's complaint or Rule 7(a) reply.  (MSJ Reply at 13 n.4.)  Because Plaintiff failed to raise this claim in his complaint or Rule 7(a) Reply, the claims are not properly before the Court.  *See Cutrera*, 2005 WL 2659978, at *5.  However, these claims would fail even if they had been properly raised by Plaintiff.

In support of his claim that he had a right to confront and cross-examine witnesses against him and review all documents used against him, Plaintiff cites *Greene v. McElroy*, 360 U.S. 474 (1959).  The plaintiff in *Greene* was terminated from his position as an aeronautical engineer after the United States government revoked his security clearance, which barred him from gaining employment elsewhere in the field of aeronautics and thus impaired his liberty to pursue his chosen profession.  *Greene*, 360 U.S. at 487, 508.  The Supreme Court held that "in the absence of explicit authorization from either the President or Congress, the [defendants] were not empowered to deprive [the plaintiff] of his job in a proceeding in which he was not afforded the safeguards of confrontation and cross-examination."  *Id.* at 508.  The limited holding *Greene* is not applicable to Plaintiff's case, based on Plaintiff's failure to demonstrate an entitlement to due process in connection with his contract nonrenewal.  As discussed previously herein, Plaintiff has not established a protected property interest in continued employment with the District, nor has he established the violation of a liberty interest in connection with his contract nonrenewal, and thus has no constitutional right to due process in connection with his contract nonrenewal.  Accordingly, Plaintiff's alleged defects in the due process he received, including his allegations that he was not afforded the opportunity to confront and cross-examine his accusers or examine documents used in the course of his grievance hearings, do not state a Fourteenth Amendment violation.  Even if Plaintiff had properly raised these claims, the Court concludes that Blacknall and Cook would be entitled to qualified immunity on Plaintiff's claims that he was denied the right to confront his accusers and examine fact documents

Duncanville curriculum.  (Rule 7(a) Reply at 3, 12; 22-23.)  Cook, Plaintiff argues, violated his due process rights by failing to investigate Blacknall before submitting her contract nonrenewal recommendation to the Board of Trustees.[28]  (Rule 7(a) Reply at 33.)

Plaintiff has cited to no authority showing that he had a property or liberty interest in receiving an intervention plan, accurate information about his contract nonrenewal,[29] or accurate statements at his grievance hearing.  Plaintiff has also cited to no authority showing that he had a protected property or liberty interest in an investigation of Blacknall's recommendation.  None of these claims plausibly support a claim for a deprivation of property or liberty interests.  Thus, viewing the evidence in the light most favorable to Plaintiff, the Court concludes that Plaintiff has failed to raise a fact issue as to whether Blacknall or Cook violated Plaintiff's Fourteenth Amendment right to due process with respect to Plaintiff's claims that Blacknall did not provide him with an intervention plan, gave him accurate information about his contract renewal, and made incorrect statements at his grievance hearing, or that Cook failed to investigate Blacknall.  Thus, the Court concludes that Blacknall and Cook are entitled to qualified immunity on Plaintiff's claims that Blacknall and Cook violated his due process rights by those actions.  Accordingly, summary judgment will be GRANTED for Blacknall and Cook in their individual capacities on these claims.

---

[28]In his summary judgment response, Plaintiff also makes a bare allegation that Cook "violated Plaintiff's right to due process of law under 1983 when he placed plaintiff on administrative leave on May 27, 2005."  (Resp. at 15.)  Because Plaintiff failed to raise this claim in his complaint or Rule 7(a) Reply, this claim is not properly before the Court.  *See Cutrera*, 2005 WL 2659978, at *5.  Even if properly raised, this claim would fail.  Plaintiff has not briefed this issue, alleged that he was not paid during the administrative leave, or otherwise demonstrated the deprivation of a property or liberty interest in connection with the placement on administrative leave.  Thus, he has not established a Fourteenth Amendment violation in connection with his placement on administrative leave for the last week of the school year.

[29]Plaintiff cites a letter from Blacknall which states that "[a]s a probationary teacher with the Duncanville school district, I have not renewed your contract for the 2003-2004 school year.  Contract recommendations go to the Duncanville school board on Monday, March 31, 2003.  If you would like to turn in a letter of resignation today or Monday Morning I would immediately take your name off the list for contract no renewals."  (Rule 7(a) Reply App. at 3.)

### 6.      Due Process Claims Based on State Statutes and Regulations

Plaintiff grounds one subset of his Fourteenth Amendment claims in allegations that Blacknall violated various state statutes and regulations.  That subset includes the allegations that Blacknall violated his due process in the following ways: (1) failing to provide him with timely documentation of a statement[30] he allegedly made, in violation of the Texas Education Code and the Commissioner's Rules Concerning Educator Appraisal; (2) forging another teacher's signature on that note in violation of the Texas Penal Code;[31] (3) telling him she had the authority to recommend that his contract not be renewed, in violation of PDAS rules; and (4) conducting an appraisal without complying with all PDAS requirements.[32]  (Rule 7(a) Reply at 3-6; 10; 12-16; 20-21.)  Even assuming, *arguendo*, that Plaintiff could establish that such violations occurred, such a showing does not indicate that Plaintiff's constitutional rights have been violated.  "An alleged violation of state law unaccompanied by some more precise claim of federal right than a general claim of lack of due process is not the sort of deprivation recognizable under 42 U.S.C. § 1983." *Housley v. N. Panola*

---

[30] In Blacknall's March 28, 2003 letter to Plaintiff regarding his contract nonrenewal, Blacknall wrote that he had told his students "'after March and April I will not be here anymore.  You are going to miss me.  If you get a mean teacher next year you will say to her I wish Mr. Hernandez was here, he is nice.  You will tell Mrs. Blacknall we want Mr. Hernandez back, he is a nice teacher.  He is the best teacher.  But you will never see me again.'"  (Rule 7(a) Reply at 3.)  On the basis of this alleged speech, Plaintiff makes one vague reference to a First Amendment claim in his summary judgment response brief. (Pl. Br. at 9.)  He argues that Blacknall admits that her contract nonrenewal recommendation was causally connected to this speech.  *Id.*  However, he has not further briefed this issue, nor clearly acknowledged or denied making such a statement.  Thus, the Court does not address Plaintiff's allegations regarding this statement as a First Amendment claim.  Even if it were to be construed as such, Plaintiff has not shown that such a statement addresses a matter of public concern.

[31] Plaintiff also allege that Blacknall violated the Texas Penal Code by committing an act of conspiracy with three other teachers, who he asserts were asked to "monitor, keep track, eavesdrop, and spy" on him.  Plaintiff has not asserted any due process violation in connection with this claim, or any other constitutional violations; thus, the Court does not address it herein.  (Compl. at 3; Rule 7(a) Reply at 6-7.)

[32] For example, Plaintiff argues that his Summative Annual Appraisal was "inconsistent with the Observation Summary to Plaintiff on 11-22-2003."  (Rule 7(a) Reply at 13.)  He also alleges that Blacknall improperly based Plaintiff's marks on Blacknall's opinion and  failed "to mention, consider, and discuss important data in Plaintiff's Teacher's Self-Report" *Id.* at 14-16.  He also alleges that she prevented him from completing his PDAS-required Intervention Plan in the last two weeks of the school year.  *Id.* at 16, 20-21.

*Consol. Sch. Dist.*, 656 F. Supp. 1087, 1092 (N.D. Miss.1987) (citing *McDowell v. Texas*, 465 F.2d

1342, 1345-46 (5th Cir. 1971); *Boston Env. Sanitation Inspectors Ass'n v. Boston*, 794 F.2d 12, 13

(1st Cir. 1986).  In addition, "even if an action by a government entity violates its own rules or those

of the state, there is no constitutional deprivation unless the conduct also trespasses on federal

constitutional safeguards."  *Ramirez v. Ahn*, 843 F.2d 864, 867 (5th Cir. 1989) (citing *Franceski v.*

*Plaquemines Parish Sch. Bd.*, 772 F.2d 197, 200 (5th Cir.1985); *see also Marcotte v. Deckard*, 2005

WL 2291921, at *2 (N.D. Tex. Sept. 16, 2005) ("The mere failure of an official to follow state law

or regulation, without more, does not violate constitutional minima.") (citing *Murray v. Miss. Dept.*

*of Corr.*, 911 F.2d 1167, 1168 (5th Cir. 1990); *Ramirez*, 843 F.2d at 867; *Baker v. McCollan*, 433

U.S. 137, 146-47 (1979)).

    In the instant matter, Plaintiff has not identified any basis for finding that the vague due

process violations he alleges in connection with state statutes and regulations violate a

constitutionally protected interest.  As discussed above, Plaintiff had no protected property interest

in employment with the District beyond his contract term.  To the extent that any of the alleged

violations implicated Plaintiff's continued employment, they do not implicate a protected interest.

Also as discussed above, Plaintiff has not established that any of those alleged violations infringed

upon his liberty interest in the pursuit of his profession.  Plaintiff therefore has failed to establish

that Blacknall or Cook violated Plaintiff's Fourteenth Amendment due process rights through their

alleged violations of state statutes and regulations.  *See, e.g. Rogers*, 2004 WL 1698202, at *4-5

(finding that evidence that defendants did not follow state statutes or regulations did not establish

violation of constitutional right); *Anderson v. Tex. Health Care Sys.*, 2000 WL 145082, at *3 (N.D.

Tex. Feb. 8, 2000) (dismissing § 1983 claim where plaintiff grounded due process claim in a state

statute affording peer review of her action, because she did not point to a right arising out of or

protected by federal law in connection with her allegations regarding irregularities in that peer review process).  Thus, the Court concludes that Blacknall and Cook are entitled to qualified immunity on Plaintiff's claims that Blacknall and Cook violated his due process rights by allegedly violating various state statutes and regulations.  Accordingly, summary judgment will be GRANTED for Blacknall and Cook in their individual capacities on these claims.

### 7.    Equal Protection Claims

In his complaint, Plaintiff alleges that he "was deprived of his rights of equal protection of the laws under XIV Amendment of the constitution of the United States." (Compl at 3.)  In his summary judgment response, without further elaboration, Plaintiff alleges that he was denied equal protection of the law with respect to his liberty to serve as a bilingual teacher, contract, pursue a profession, and receive privileges under a contract implied in law.  (Pl. Br. at 5-6.)

"The equal protection clause of the fourteenth amendment is essentially a mandate that all persons similarly situated must be treated alike."  *Rolf v. City of San Antonio*, 77 F.3 823, 828 (5th Cir. 1996) (citing *Qutb v. Strauss*, 11 F.3d 488 (5th Cir.1993) (citing *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432 (1985)).  An equal protection inquiry is appropriate "'if the challenged government action classifies or distinguishes between two or more relevant groups.'" *Rolf*, 77 F.3 at 828 (citing *Qutb*, 11 F.3d 488).

Plaintiff makes a general assertion without reference to either Blacknall or Cook in his complaint that "persons outside the protected class received more favorable treatment because of their national origin[.]"  (Compl. at 2.)  However, he has neither alleged, much less presented any evidence, demonstrating that Blacknall or Cook treated similarly-situated individuals differently on the basis of an impermissible ground.  Thus, Plaintiff has failed to establish that Blacknall or Cook violated Plaintiff's equal protection rights.  *See, e.g., Woodard v. Andrus*, 419 F.3d 348, 354 (5th

Cir. 2005) (finding that plaintiff did not state an equal protection claim where she failed to make a showing that defendant's actions distinguished between different groups); *Johnson v. Houston Ind. Sch. Dist.*, 930 F. Supp. 276, 288 (S.D. Tex. 1996) (finding that defendants were entitled to summary judgment on plaintiffs' equal protection claims, where they had presented no summary judgment evidence to support their claim of differential treatment).   Accordingly, Blacknall and Cook are entitled to qualified immunity on these equal protection claims, and summary judgment will be GRANTED for them in their individual capacities with respect to these claims.

## V.  CONCLUSION

For the foregoing reasons, the Court concludes that no genuine issue of material fact exists with respect to Defendants' Blacknall and Cook's claims of qualified immunity.[33]   Accordingly, *Defendants Jerry Cook's and Robbie Blacknall's Motion for Summary Judgment on the Grounds of Qualified Immunity* is **GRANTED**.   Plaintiff's claims against Blacknall and Cook in their individual capacities are hereby **DISMISSED** with prejudice

**SO ORDERED** on this 5th day of December, 2005.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[33]Plaintiff cites *Winfield v. Bass*, 106 F.3d 525 (4th Cir. 1997) for the proposition that "when the question of a governmental official's qualified immunity defense turns on issues of material facts which are in controversy, summary judgment is not appropriate."  (Resp. at 18-19.)  Such a proposition is inapplicable in the instant matter. The resolution of Blacknall and Cook's motion did not turn on issues of material fact; rather, under the facts alleged by Plaintiff, he did not establish that either of the individual defendants violated a clearly established constitutional right.