IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GILBERTO HERNANDEZ, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | Civil Action No. 3:04-CV-2028-BH (B) |
| v. | § | |
| | § | |
| DUNCANVILLE SCHOOL DISTRICT, | § | |
| et al., | § | |
| | § | |
| **Defendants.** | § | **Consent Case** |

## MEMORANDUM OPINION AND ORDER

Pursuant to the District Court's *Order Transferring Case to Magistrate Judge*, filed January 13, 2005, this matter has been transferred to the undersigned United States Magistrate Judge for the conduct of all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c).

Before the Court are:

(1)     *Defendants' Motion for Summary Judgment* ("MSJ"), filed January 31, 2006;

(2)     *Defendants' Brief in Support of Defendants' Motion for Summary Judgment* ("MSJ Br."), filed January 31, 2006;

(3)     *Appendix in Support of Defendants Jerry Cook's and Robbie Blacknall's Motion for Summary Judgment on the Grounds of Qualified Immunity* ("Def. App."),[1] filed June 16, 2005;

(4)     *Plaintiff's Response to Defendants' Motion for Summary Judgment* ("Resp."), filed February 21, 2006;

(5)     *Plaintiff's Brief in Support* [of] *Plaintiff's Response to Defendants' Motion for Summary Judgment* ("Resp. Br."), filed February 21, 2006;

---

[1] Defendants explain that the appendix filed with their previous motion for summary judgment contains all the evidence in support of the instant motion for summary judgment, and all the references therein are to the previously-filed appendix.  (MSJ at 1 n.1.)

(6)     *Appendix to Brief in Support* [of] *Plaintiff's Response to Defendants*['] *Motion for Summary Judgment* ("Pl. App."), filed February 21, 2006;

(7)     *Defendants' Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment* ("MSJ Reply"), filed March 7, 2006;

(8)     *Defendants' Motion to Stay Discovery and Motion for Protective Order*, filed February 3, 2006; and

(9)     *Plaintiff's Response to Defendants' Motion to Stay Discovery and Motion for Protective Order*, filed February 23, 2006.

Based on the pleadings, the filings listed above and the applicable law, the Court is of the opinion that the motion for summary judgment should be **GRANTED** in part and **DENIED** in part**,** and that the motion to stay discovery and for protective order should be **DENIED** as moot.

## I. BACKGROUND

During the 2002-2003 school year, Plaintiff Gilberto Hernandez ("Plaintiff") was a first year teacher of bilingual first graders at Acton Elementary School ("Acton") in the Duncanville Independent School District ("District").  (Def. Ans. at 2-3.)  On March 28, 2003, Acton Principal Robbie Irene Blacknall ("Blacknall") informed Plaintiff that she planned to recommend to the District's Board of Trustees ("Board") that his probationary contract not be renewed.  *Id*; *see also* Compl. at 3.  The Board voted on March 31, 2003 to terminate Plaintiff' probationary contract at the end of the contract year.  (Def. Ans. at 3.)

On February 6, 2004, Plaintiff, proceeding pro se, filed suit[2] ("*Hernandez* I") against the District, Blacknall, and District Superintendent Dr. Jerry Cook ("Cook").  On August 20, 2004, the United States District Court for the Northern District of Texas granted Defendants' Rule 12(b)(5) motion to dismiss for failure to effect service, and dismissed all of Plaintiff's claims without

---

[2]Civil Action No. 3:04-CV-255-AH.

prejudice.  Subsequently, the Court denied the District's counterclaim for attorneys' fees because the suit had been dismissed on procedural grounds, but ordered that the District recover its costs from Plaintiff.

Plaintiff filed the instant action on September 17, 2004 ("*Hernandez* II"), asserting claims identical to those asserted in *Hernandez* I.  Specifically, he sued Blacknall and Cook in both their individual and official capacities, alleging that Defendants discriminated and retaliated against him in violation of Title VII and the Fourteenth Amendment.  (Compl. at 1-2.)  Plaintiff also asserts claims of wrongful termination, slander, libel, defamation of character, fraud and conspiracy, and appears to assert a claim for intentional infliction of emotional distress.   (Compl. at 2-4.) Furthermore, Plaintiff asserts that Defendants violated his rights under § 21.351 of the Texas Education Code and § 89.1201 of the Texas Administrative Code and that he "was deprived of his property interest in his employment contract provided under the Term Contract Nonrenewal Act." *Id*.  By this action, he seeks compensatory and punitive damages.  *Id*. at 4.

On December 20, 2004, Defendants moved to dismiss all of Plaintiff's state law and Title VII claims, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(c).[3]  The Court granted Defendants' motion on March 29, 2004.  *See Hernandez v. Duncanville Indep. Sch. Dist.*, 2005 WL 723458 (N.D. Tex. Mar. 29, 2005).  Therein, the Court also granted Blacknall and Cook's motion for a Rule 7(a) reply, and stayed discovery pending resolution of the issue of qualified immunity.  *Id*. at *9-10.  Plaintiff filed a timely Rule 7(a) reply on April 15, 2005, and on May 17, 2005, the Court entered its *Second Amended Order Regarding Case Management and Scheduling* directing Blacknall and Cook to file

---

[3]In response to the instant motion for summary judgment, Plaintiff discusses a number of Title VII claims; for example, he asserts that he was improperly terminated based on his age, race, national origin, and sex.  (Resp. Br. at 40-42.)  Because Plaintiff's Title VII claims have already been dismissed, the Court does not address them herein.

a dispositive motion to address the qualified immunity issue.

On June 16, 2005, Blacknall and Cook ("Individual Defendants") moved for summary judgment on the § 1983 claims against them individually on grounds of qualified immunity. In its *Memorandum Opinion and Order* issued December 5, 2005, the Court granted the motion, finding that Plaintiff failed to raise a fact issue with respect to his claims that Blacknall and Cook violated Plaintiff's First and Fourteenth Amendment rights. *See Hernandez*, 2005 WL 3293995 (N.D. Tex. Dec. 5, 2005). The Court therefore dismissed Plaintiff's claims against Blacknall and Cook in their individual capacities with prejudice. *Id*. at *22. Accordingly, the only claims remaining in this suit at this time are the § 1983 claims against the District and against Blacknall and Cook in their official capacities (collectively, "Defendants").

On January 31, 2006, Defendants filed the instant motion for summary judgment. Defendants argue therein that Plaintiff's claims against Blacknall and Cook in their official capacities are redundant to the claims against the District, and should therefore be dismissed. (MSJ at 3.) Defendants also argue that Plaintiff has failed to establish governmental liability under § 1983 against the District. *Id*. at 3. Finally, Defendants move for summary judgment on their amended counterclaim for costs and reasonable attorneys' fees. *Id*. at 46-49.

In his response, Plaintiff argues that his clearly established constitutional rights were violated by the Defendants through acts of racial discrimination, sexual harassment, retaliation, unequal treatment, differential treatment, denials of due process, stigmatization, and denial of his association with his colleagues. (Resp. at 3; Resp. Br. at 3.) He also asserts that the Court should not dismiss his claims until he has had a chance to depose a District representative. *Id*. This matter is now before the Court and ripe for determination.

4

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The pleadings, depositions, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists.  FED. R. CIV. P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24.  To carry this burden, the "opponent must do more than simply show . . . some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor.  *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).  Summary judgment in favor of the movant is

proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

Generally, the pleadings of a plaintiff who is proceeding *pro se* must be liberally construed in his favor.[4] *See Hurd v. Doe*, 2003 WL 21640569, *3 (N.D. Tex. July 10, 2003). However, under Rule 56 of the Federal Rules of Civil Procedure, the court does not have an obligation to '"sift through the record in search of evidence' to support the nonmovant's opposition to the motion for summary judgment." *Crane v. Bowles*, 2004 WL 1057771, at *1 (N.D. Tex. May 6, 2004) (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994)). Instead, "the party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim." *Id.* (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

## III. ANALYSIS

### A.     Official Capacity Claims Against Blacknall and Cook

Defendants begin by noting that the only claims remaining against Blacknall and Cook are the official capacity § 1983 claims, and that because such claims are redundant to the § 1983 claims brought against the District, the claims against Blacknall and Cook should be dismissed. (MSJ Br. at 5-6.) Because the District is also a defendant, the official capacity claims against Blacknall and Cook are redundant, and dismissal of those claims is warranted. *Beall Legacy Partners, L.P. v. City of Waxahachie, Tex.*, 2006 WL 353471, at *2 (N.D. Tex. Feb. 16, 2006) (citing *Kentucky v. Graham*,

---

[4]Plaintiff has some experience as a *pro se* litigator, having represented himself in one lawsuit, *Hernandez v. Chief Auto Parts, Inc.*, 3:97-CV-3066-T, in addition this suit against the present defendants. Also, according to his resume, he has a paralegal degree and has attended one year of law school. (App. to Def. Emerg. Mot. Compel at 34.)

473 U.S. 159, 166 (1985)); *McCall v. Dallas Indep. School Dist.*, 2001 WL 1335853, at *2 (N.D.

Tex. Oct. 25, 2001) ("A suit against a government official in his official capacity is only another

way of pleading an action against an entity of which the official is an agent.") (citing *Monell v.

Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978)).  Accordingly, the only remaining defendant

is the District, and the Court will address the remaining arguments in Defendants' motion as those

of the District.

**B.      Framework for a Finding of Governmental Liability Under § 1983**

Next, the District argues that Plaintiff has failed to establish governmental liability under §

1983 for two reasons.  (MSJ Br. at 3.)  First, the District asserts that the threshold question for the

Court in deciding this motion is whether Plaintiff has established a violation of his constitutional

rights by either the District, or the Individual Defendants in their official capacities.  *Id*. at 2.

According to the District, Plaintiff has failed to make such a showing.  Second, the District argues

that Plaintiff's governmental liability claim would fail even Plaintiff established a violation of his

constitutional rights, because he cannot show that any alleged constitutional violations occurred due

to a custom, policy, or practice adopted by the final policymaker of the District.  *Id*. at 2-3.

As the District asserts, the threshold question for the Court in deciding this motion is

determining whether Plaintiff has established that the District or the Individual Defendants in their

official capacities violated Plaintiff's constitutional rights.  This is because "[w]ithout an underlying

constitutional violation, an essential element of municipal liability is missing." *Becerra v. Asher*,

105 F.3d 1042, 1048 (5th Cir. 1997).  The Court therefore begins its analysis of the District's motion

by determining whether Plaintiff has established that a violation of his constitutional rights occurred.

In doing so, the Court summarizes its memorandum opinion and order on the Individual Defendants'

motion for summary judgment on grounds of qualified immunity, in which the Court found that Plaintiff failed to establish that Blacknall or Cook violated Plaintiff's constitutional rights. Plaintiff revisits some of those claims in his response to the instant motion. Where he has done so, the Court evaluates his efforts to establish that his constitutional rights were in fact violated by Blacknall and Cook. Also, where Plaintiff asserts that additional discovery would allow him to establish that a constitutional violation occurred, the Court evaluates such claims. Furthermore, the Court notes that its discussion of alleged constitutional violations centers on the actions of Blacknall and Cook because they are the actors that Plaintiff's pleadings and response to the instant motion identify as allegedly having violated his constitutional rights.[5]

Finally, the Court does not address the claims Plaintiff has raised in his response on behalf of his students or their parents. As he has been admonished previously by this Court, Plaintiff brought suit on behalf of himself. *Hernandez*, 2005 WL 723458, at *5. Plaintiff did not, and cannot, assert claims on behalf of the students he taught or their parents. *Id*. (citing *McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000) ("A pro se litigant...is not empowered to proceed on behalf of anyone other than himself.") (citing 28 U.S.C. § 1654; *Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1308 (2d Cir. 1991)).

## C.   First Amendment Retaliation and Related Claims

The District asserts that it is entitled to summary judgment on Plaintiff's claims that his First Amendment rights were violated because, as this Court has previously found, he has failed to raise

---

[5]Plaintiff specifically alleges only once that the District itself engaged in an action that violated his constitutional rights. That single claim, relating to a Board meeting on May 19, 2003, is addressed herein by the Court. (Resp. Br. at 47-48.) Plaintiff also titles two sections of his response in terms of the District's violation of his rights, but his discussion in those sections focus exclusively on the actions of Blacknall. (Resp. at 31-36; 48-49.) Thus, it appears that Plaintiff's claims against the District consist primarily of his official capacity claims against Blacknall and Cook.

a fact issue with respect to any of those claims. (MSJ Br. at 7.) In its order on the Individual Defendants' motion for summary judgment, this Court construed as arising under the First Amendment Plaintiff's claims that he was terminated in retaliation for speech related to treatment of Hispanic students, helping Hispanic parents communicate with the School Board, and speaking with other bilingual teachers. *Hernandez*, 2005 WL 723458, at *4 (citing Compl. at 2-3).

To establish a First Amendment retaliatory discharge claim under § 1983, Plaintiff must show that: "(1) [he] suffered an adverse employment action; (2) the speech at issue involved matters of public concern; (3) [his] interest in the speech outweighs the government's interest in efficiency; and (4) the speech precipitated the adverse employment action." *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (citing *Kinney v. Weaver*, 367 F.3d 337, 356 (5th Cir. 2004)). "If this test is passed, the burden shifts to Defendants to show that "'they would have come to the same conclusion in the absence of the protected conduct.'" *Alexander*, 392 F.3d at 144 (quoting *Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001).

"'Whether the speech at issue relates to a matter of public concern is a question of law to be resolved by the court.'" *Markos v. City of Atlanta, Tex.*, 364 F.3d 567, 570 (5th Cir. 2004) (quoting *Tompkins v. Vickers*, 26 F.3d 603, 606 (5th Cir. 1994)). "Generally, the inquiry is whether the public employee was speaking as a citizen upon matters of public concern or as an employee upon matters only of personal interest." *Markos*, 364 F.2d at 570 (citing *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 221 (5th Cir. 1999) (citing *Connick v. Myers*, 461 U.S. 138, 147 (1982)). "The existence of an element of personal interest on the part of an employee does not prevent a finding that the speech as a whole raises issues of public concern; but an employee cannot transform a personal conflict into an issue of public concern simply by arguing that individual concerns might

have been of interest to the public under different circumstances." *Markos*, 364 F.2d at 570 (citing *Bradshaw v. Pittsburg Indep. Sch. Dist.*, 207 F.3d 814, 816 (5th Cir. 2000)) (citations omitted). "If the nature of the speech is purely private, such as a dispute over one employee's job performance, a nontenured school teacher enjoys no first amendment protection as to that speech." *Kirkland v. Northside Indep. Sch. Dist.*, 890 F.2d 794, 799 (5th Cir. 1989) (citing *Connick*, 461 U.S. at 146.)

"Matters of public concern are those which can be fairly considered as relating to any matter of political, social, or other concern to the community." *Alexander*, 392 F.3d at 142 (quoting *Branton v. City of Dallas*, 272 F.3d 730, 739 (5th Cir. 2001) (quoting *Connick*, 461 U.S. at 146) (internal quotations omitted.) "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Markos*, 364 F.3d at 570 (citing *Connick*, 461 U.S. at 147-48; *Tompkins*, 26 F.3d at 606.) "These factors should be considered as a package, and their significance will differ depending on the circumstances of the particular situation." *Markos*, 364 F.3d at 570 (citing *Teague v. City of Flower Mound*, 179 F.3d 377, 381 (5th Cir. 1999) (citing *Moore v. City of Kilgore*, 877 F.2d 364, 370 (5th Cir. 1989)).

Plaintiff must precisely identify the speech as to which he claims First Amendment protection, so that the Court may evaluate the content, form, and context of that speech. *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 342 (5th Cir. 2003). He "is required to be specific as to when [his] statement or statements were made, to whom they were made, whether they were oral or written, and the content of those statements." *Id.*

1.      **Treatment of Hispanic Students**

In the Court's order on the Individual Defendants' summary judgment motion, the Court

began by addressing Plaintiff's extensive discussion of his claim that Blacknall and Cook retaliated against Plaintiff based on his speech regarding the treatment of Hispanic students, as directed to the parents of Hispanic students. *Hernandez*, 2005 WL 3293995, at *5-7. Specifically, the Court addressed several topics Plaintiff claimed in his response to have spoken to the parents about with respect to the treatment of students, including: (1) a lack of support from the District; (2) the low quality of education provided to the bilingual students; (3) the deficient District curriculum; (4) unwise spending of bilingual funding; (5) failure to provide necessary textbooks; (6) abuses of bilingual students by other teachers; and (7)  the District's failure to follow state bilingual guidelines. *Id*. Court observed that the content of some of Plaintiff's claimed speech appeared to address a matter of public concern, i.e., discrimination. *Id*. at *6. However, the Court found that because Plaintiff provided only a minimal level of information about his speech, he had failed to satisfy his burden to show that the content, form, and context of his speech indicate that he spoke on a matter of public concern. *Id*. at 6 (citing *Foley*, 355 F.3d at 342.) In addition, because Plaintiff had not alleged that he engaged in protected speech until after he found out that his contract would not be renewed, the Court found that Plaintiff's speech appeared to be more in the nature of a personal grievance than an expression of public concern. *Id*. at *6-7 (citing *Bradshaw*, 207 F.3d at 818.) Moreover, because Plaintiff failed to point to any evidence that the allegedly protected speech occurred *prior* to Blacknall's decision to recommend that he not be rehired, the Court found that he failed to raise an issue of material fact with respect to his claim that Blacknall retaliated against him in violation of his First Amendment rights by recommending that his contract not be renewed. *Id*. at *7 (citing *Finch v. Fort Bend Indep. Sch. Dist.*, 333 F.3d 555, 564 (5th Cir. 2003) ("Some of these alleged violations of associational rights occurred after [plaintiff] was reassigned.  It is untenable

to argue [plaintiff's] reassignment was taken in retaliation for such associations."); *Kline v. N. Tex. State Univ.*, 782 F.2d 1228, 1233 n.5 (5th Cir. 1986) (noting as a substantial flaw in the plaintiff's First Amendment retaliation claim the fact that his allegedly protected speech did not occur until after his dismissal, and that he could not have been dismissed in retaliation for speech that had not yet occurred)).

### a.      Mistreatment by Teachers and Aides and Curricular Concerns

In his response to the instant summary judgment motion, Plaintiff now points to a meeting he had with Blacknall on October 31, 2002, and a letter he wrote to Blacknall dated November 1, 2002, as support for his claim that he was retaliated against based on some of his speech regarding the treatment of Hispanic children.  Plaintiff asserts that at the meeting on October 31, 2002,[6] he orally communicated to Blacknall that he had observed differential treatment and mistreatment of Hispanic students by Acton teachers, and that only African-American children were receiving instructional help. (Resp. Br. at 13; 15; 33-34; 36-37.)   At that meeting he also alleges that he brought to Blacknall's attention concerns about Acton's compliance with the Texas Education Code and District policy for educating bilingual and special education students. *Id*. at 13-15.  With respect to these claims, the support Plaintiff provides is limited to his bare allegations about the speech, as set forth in his summary judgment response.  Plaintiff provides no competent summary judgment evidence, such as his own affidavit in compliance with Fed. R. Civ. P. 56, to support this claim. Accordingly, Plaintiff has failed to satisfy his burden to show that the content, form, and context of his speech at the meeting indicate that he spoke on a matter of public concern.  *See Alexander*, 392

---

[6]Plaintiff asserts that he made allegedly protected statements to Blacknall at a meeting on October 31, 2002. However, it appears that the meeting actually took place prior to that date, as the body of the letter he wrote regarding that meeting refers to a discussion in the prior week.  (Pl. App. at 7.)

F.2d at 142 (agreeing with district court, which found that plaintiffs "failed to establish a § 1983 claim because they did not proffer evidence showing speech on matters of public concern, the second requirement [in a retaliatory discharge claim].")

Plaintiff also alleges that on November 1, 2002, he wrote a letter to Blacknall to share his concern about mistreatment of Hispanic students by a teacher's aide, Mary Murphy ("Murphy"), and failure to use bilingual funding appropriately, as "the District and school campus were not identifying limited English proficient students, not providing bilingual education as integral parts of the regular program, not providing certified teaching personnel, not assessing achievement for essential skills and knowledge and accountability of limited English proficient students." (Resp. Br. at 11-12; 44-46.)  Plaintiff includes a copy of this letter in the appendix to his response.

First, the Court examines the context of this speech.  The subject line of the letter is entitled "Response to Meeting Summary letter dated October 31, 2002." (Pl. App. at 7.)  That summary, authored by Blacknall, lists the items discussed at the meeting she had with Plaintiff, including appropriate cell phone usage, curriculum planning, implementation, and materials, and an instruction to treat all staff members the same, even if they do not have a degree.  (Def. App. at 13.)  The summary also addresses "recent parent concerns," including supervision of students in the morning and during the day and appropriate use of English and Spanish instruction to prepare students for the Texas Assessment of Knowledge and Skills ("TAKS") test.  *Id*.  Plaintiff's letter begins by stating "I wish to thank you for discussing with me the matters that were of concern to you last week." (Pl. App. at 7.)  The letter then addresses the concerns Blacknall had listed in her summary of their meeting.  *Id*. at 7-8.  Thus, while this communication occurred in advance of Blacknall's decision to recommend that Plaintiff not be rehired, the context nevertheless indicates that the

13

speech in the letter is part of a dialogue regarding Plaintiff's performance rather than an expression of public concern on Plaintiff's part.

The form of the speech further supports a finding that Plaintiff did not compose the letter to express a public concern.  The letter is addressed exclusively to Blacknall, explicitly in response to concerns she had expressed.  Such a form indicates that the letter is one element of communication occurring in an employer-employee dispute.  Moreover, the private nature of the letter weighs in favor of a finding that Plaintiff's speech regarding Murphy and the curricular dispute were private rather than public.  *See, e.g., Bradshaw*, 207 F.3d at 817 (observing that while keeping an employer-employee dispute private is not dispositive of the public concern issue, the private form of such speech weighs in favor of finding that employee did not speak out on matter of public concern) (citing *Teague*, 179 F.3d at 383; *Moore v. Miss. Valley State Univ*., 871 F.2d 545, 551 (5th Cir. 1989)).

Third, the letter's contents consist of Plaintiff's defense of his teaching performance, rather than expressions of public concern raised by Plaintiff.  Plaintiff indicates in his letter that one of the concerns expressed by Blacknall was whether he was following the Duncanville curriculum.  (Pl. App. at 7-8.)  To the extent that Plaintiff criticizes the District curriculum, he does so in defense of his use of means other than those provided for in the District curriculum to meet his students' needs. *Id*.  With respect to Plaintiff's criticism of Murphy's treatment of Hispanic parents and students, Plaintiff mentions the issue in response to Blacknall's concern about Plaintiff's query to another teacher regarding whether Murphy was a certified teacher.  *Id*. at 7.  While Plaintiff does mention concerns expressed to him by parents of bilingual students regarding Murphy's treatment of those students and of a parent, he specifically states that he himself has no problem with her. *Id*. at 7.  The

14

content with respect to Murphy generally emphasizes a defense of Plaintiff's own actions concerning her rather than a request that Blacknall herself address Murphy's behavior.  In sum, the letter's content simply does not reflect the impassioned speech Plaintiff expresses in his response to the summary judgment motion regarding his perceptions of the mistreatment of Hispanic students and shortcomings in the education Acton provided for them.  The Court therefore finds that although the content of the letter does address Plaintiff's curricular concerns and his interaction with Blacknall regarding Murphy, the content relates to a personal communication regarding Plaintiff's teaching, rather than a matter of public concern.

Accordingly, the Court concludes, based on an examination of the context, form, and content of Plaintiff's letter, that the speech therein is not entitled to First Amendment protection. Rather, the speech in the letter relates to a private dispute between an employer and an employee.  *See Teague*, 179 F.3d at 383 (finding that plaintiff's written grievances following their reprimands focused "primarily on clearing their names-not on rooting out police corruption per se.").

### b.      Lack of Textbooks

Next, the Court addresses Plaintiff's assertion that he was retaliated against for speaking out about an alleged lack of textbooks.  (Resp. Br. 27-30; 48-50.)  In support, Plaintiff cites an email he received on November 7, 2002 in response to his request to Rudy Mendoza, the Director for Special Programs, for a list of state-adopted bilingual textbooks.  *Id*. at 27.  That email states: "Per Rudy Mendoza, [sic] instructions I am sending you a list of the State Adoption Textbooks for Bilingual for your grade level.  This is only for your information."  (Pl. App. at 8; 26.)  This evidence shows only that Plaintiff inquired about textbooks; it does not show that he spoke out in any way about the District's failure to provide textbooks.  Plaintiff asserts that he spoke to Blacknall about the lack of

textbooks, as well as to Lou Anne Northcutt ("Northcutt"), the Director of Elementary Education, and Eunice Hamlin ("Hamlin"), a first grade curriculum writer.  (Pl. Resp. at 29; 48-49.)  However, Plaintiff provides no evidence that he actually spoke to those individuals.  Instead, he asserts that he should be allowed to depose Blacknall, Mendoza, Hamlin, and Northcutt regarding the lack of textbooks and his complaints to them about the textbooks.  (Resp. Br. 29-30.)  Whether the District lacked textbooks is not the issue before the Court; the issue is Plaintiff's speech about the alleged lack of textbooks.  None of the individuals Plaintiff seeks to depose have any information Plaintiff could not provide himself regarding the content, context, and form of his complaints about the lack of textbooks.  Plaintiff has therefore failed to proffer evidence showing that he spoke on a matter of public concern, and thus cannot establish a First Amendment violation with respect to this claim. *Alexander*, 392 F.2d at 142.

### c.      Other Claims Related to Student Treatment

Finally, Plaintiff raises a number of other First Amendment retaliation claims in his response to the instant summary judgment for which he provides no evidence.  One is that he noticed that an African-American teacher "yelled" at bilingual students in the cafeteria, and that "[w]hen he inquired about it, he was summoned to the principal's office and told to look the other way.  Plaintiff would not do this, and later was told by different Hispanic parents of how they had been mis-treated [in the] past.  When Plaintiff spoke out about these illegal matters, he was treated differently." (Resp. at 8.)  Another involves his assertion that beginning in August 2002, he began to speak out about the school's treatment of Hispanic parents to Blacknall, Mendoza, Northcutt, and Hamlin. (Resp. Br. at 15-19; 25.)  Third, without specifying to whom he spoke, Plaintiff asserts that he was "discriminated against for speaking out against special education students taught by uncertified

16

teacher aides[.]" *Id.* at 30.  In addition, Plaintiff alleges that he spoke to Blacknall about a local

minister's alleged provision of instructional assistance only to African-American children.  *Id.* at

37.  Fifth, Plaintiff asserts that he was "retaliated against for exposing violations of discrimination

against [disabled] Hispanic students."  *Id.* at 47.  Plaintiff provides no evidence that he actually

spoke out on these matters, or other details in support of these assertions; accordingly, he cannot

establish a First Amendment violation with respect to these claims.  *Alexander*, 392 F.2d at 142.

### 2.        School Board Meeting

In its memorandum opinion and order on the Individual Defendants' motion for summary

judgment, the Court next evaluated what appeared to be two separate First Amendment claims raised

by Plaintiff with respect to Board meetings on April 14, 2003 and May 19, 2003.[7]  First, the Court

addressed Plaintiff's claim that he was retaliated against for "helping the Hispanic parents voice

their concerns with the School Board about the mis-treatment of their children."  *Hernandez*, 2005

WL 3293995, at *7-8 (citing Compl. at 2.)  Because Plaintiff failed to precisely identify the content,

form, and context of the alleged speech, or even make clear that he actually spoke before the Board,

the Court found that he could not establish that his speech, if any, was on a matter of public concern.

*Hernandez*, 2005 WL 3293995, at *8 (citing *Foley*, 355 F.3d at 342).  Moreover, because he did not

allege that any of his claimed speech before the Board occurred prior to the decision not to renew

his contract, the Court found that Plaintiff could not show that such a decision was in retaliation for

such speech.  *Hernandez*, 2005 WL 3293995, at *8 (citing *Finch,* 333 F.3d at 564; *Kline,* 782 F.2d

at 1233 n.5).

---

[7]Plaintiff criticizes the District because the Hispanic parents were told at a Board meeting on April 14, 2003
that they had to call in advance to have a translator at meetings, where no such policy existed.  (Resp. Br. at 17.)  To
the extent that this could be construed as a claim, it is one properly brought by the parents.

The Court also addressed an apparently separate First Amendment claim alleged by Plaintiff with respect to the May 19, 2003 meeting of the Board, a claim that he revisits in response to the instant motion for summary judgment. *Hernandez*, 2005 WL 3293995, at *8. In his Rule 7(a) reply, Plaintiff asserts that Cook told Plaintiff and the Hispanic parents that they could not speak at the May 19, 2003 meeting because they were late and had failed to fill out a card; Plaintiff argues that because the parents were seated when the prayer was said, they were not late. (Rule 7(a) Reply at 31-32.) The Court found in its memorandum opinion and order on the Individual Defendants' motion for summary judgment that while Plaintiff disputes Cook's assertion that Plaintiff and the parents were late, he does not assert that he filled out a card or otherwise complied with the procedural requirements for speaking at the Board's meeting. *Hernandez*, 2005 WL 3293995, at *8. Quoting *Perry Education Association v. Perry Local Educators' Association,* 460 U.S. 37, 45 (1983), the Court observed that in a public forum such as a school board meeting, the board may "'enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.'" *Hernandez*, 2005 WL 3293995, at *8. The Court further found that a requirement that all speakers sign up in advance is a reasonable, content-neutral restriction that does not infringe on Plaintiff's First Amendment rights. *Id.* (citing *Bach v. Sch. Bd. of City of Va. Beach*, 139 F. Supp. 2d 738, 741 (E.D. Va. 2001) ("The parties agree that the School Board may properly impose such reasonable restrictions [signing up prior to the meeting] without implicating a First Amendment right.")). The Court therefore found that to the extent that Plaintiff alleged a First Amendment claim with respect to his assertion that he was not allowed to speak at the May 19, 2003 Board meeting, the few details he provided with respect to this claim did not demonstrate that

18

Cook violated Plaintiff's First Amendment rights. *Hernandez*, 2005 WL 3293995, at *8.

In revisiting this claim in response to the instant motion for summary judgment, Plaintiff now accuses the District and Cook of intentionally failing to put registration forms out after they found out that the parents would be attending the meeting. *Id*. at 48. Plaintiff provides no evidence in support of this assertion,[8] such as his own affidavit or one by the parents. While he includes an affidavit by a parent who states that she was one of many parents not allowed to speak at the meeting, that affidavit does not assert that the parent arrived on time or that no registration forms were available. (Pl. App. at 39A.) Moreover, Plaintiff's discussion again focuses on the parents' interest in speaking at the May 19, 2003 meeting, and fails to shed light on whether he himself sought to speak; thus, it is not clear that Plaintiff is actually asserting such a claim on his own behalf or on behalf of the parents. *Id*. at 47-48. Accordingly, the Court finds that Plaintiff has failed to establish a First Amendment claim with respect to the May 19, 2003 Board meeting.

### 3.      Speaking With Other Bilingual Teachers

In its memorandum opinion and order on the Individual Defendants' summary judgment motion, the Court also addressed the allegation in Plaintiff's complaint that he "was accused of speaking too much with other bilingual teachers[.]" *Hernandez*, 2005 WL 3293995, at *9 (citing Compl. at 3.) In that order, the Court liberally construed Plaintiff's claim as alleging a First Amendment retaliation claim centered on both freedom of speech and freedom of association. *Hernandez*, 2005 WL 3293995, at *9. The Court found that the only support Plaintiff provided with respect to this claim, i.e., two affidavits written by other bilingual teachers, did not precisely indicate

---

[8]Plaintiff appears to argue that if the District had provided him with the copy of the video of the meeting he had sought in the discovery process, he could establish that the parents were not late and that the District had none of the registration forms. (Resp. Br. at 48.) However, Plaintiff did not move to compel production of the video at any point in this litigation.

the content, form, or context of his speech with those teachers. *Id*. Because Plaintiff failed to precisely identify the content, form, and context of the alleged speech, the Court found that Plaintiff failed to establish that Blacknall violated his First Amendment freedom of speech. *Id*. (citing *Foley*, 355 F.3d at 342.)

In his response to the instant motion for summary judgment, Plaintiff appears to have attempted to delineate these claims more specifically. He asserts that the content of his conversations with other Hispanic teachers was discrimination by the District against the Hispanic parents, for alleged failure to follow Board Policy Guidelines on parental involvement. (Resp. Br. at 15-17.) Plaintiff also asserts that the teachers discussed a lack of bilingual textbooks. *Id*. at 29. In addition, Plaintiff asserts that he and the teachers conversed about a local minister's alleged provision of instructional assistance only to African-American children. *Id*. at 37. While such allegations address the content of Plaintiff's speech more specifically, Plaintiff still neglects to detail the form and context of such statements. For example, he does not state specifically which teachers with whom he was speaking, or when. Moreover, he provides no competent summary judgment evidence in support of his assertions regarding the content of his speech with other bilingual teachers, such as through his own affidavit. Thus, while the content of some of the claimed speech may address a matter of public concern to the extent it centers on race discrimination, Plaintiff nevertheless cannot establish a First Amendment violation with respect to his claims about his speech with other teachers. *Alexander*, 392 F.2d at 142

To the extent Plaintiff alleged claims of retaliation based on his right of association, the Court found in its decision on the Individual Defendants' motion for summary judgment that Plaintiff claims did not implicate either of the two types of freedom of association protected by the

Constitution. *Hernandez*, 2005 WL 3293995, at *9-10 (citing *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617-18 (1984) (discussing intimate associations and associational rights); *Kipps v. Caillier*, 205 F.3d 203, 205 (5th Cir. 2000)).   This finding was based in part on Plaintiff's failure to allege that the content of his discussions with his fellow teachers centered on matters of public concern. *Hernandez*, 2005 WL 3293995, at *10 (citing *Swanson v. City of Bruce, Miss.*, 105 Fed. Appx. 540, 542 (5th Cir. 2004)).   In his response to the instant summary judgment motion, Plaintiff has now alleged the content of the speech he discussed with the bilingual teachers, but has still failed to provide evidence that he spoke with the teachers on matters of public concern.[9]   Plaintiff therefore has failed to establish that Blacknall violated his First Amendment freedom of association with respect to his claim that he was accused of speaking too much with other bilingual teachers.

### 4.      Statement Plaintiff Allegedly Made to Students

Finally, the Court addresses what appears to be a First Amendment retaliation claim raised by Plaintiff in connection with one of the reasons Blacknall gave for recommending his contract nonrenewal.  (Resp. Br. at 4-6; 38.)  In Blacknall's March 28, 2003 letter to Plaintiff regarding his contract nonrenewal, Blacknall wrote that he had told his students:

> [A]fter March and April I will not be here anymore.  You are going to miss me.  If you get a mean teacher next year you will say to her I wish Mr. Hernandez was here, he is nice.  You will tell Mrs. Blacknall we want Mr. Hernandez back, he is a nice teacher.  He is the best teacher.  But you will never see me again.

(Rule 7(a) Reply App. at 3.)  In its order on the Individual Defendants' summary judgment motion,

---

[9]Plaintiff writes that his "First Amendment rights were violated by Principal Blacknall on [sic] August 2002, when Blacknall told Mrs. Espinoza not to speak or associate with Plaintiff because he was one of the bilingual teachers [who] was talking about Mrs. Espinoza."  (Resp. Br. at 38.)  Plaintiff also references Espinoza's affidavit regarding this instruction she received from Blacknall.  *Id.* at 43.  Plaintiff neither alleges nor provides support for a claim that he himself was forbidden from talking to Espinoza, and as mentioned previously, Plaintiff may only litigate on behalf of himself.  Thus, to the extent that these issues he raises could be construed as a claim, it is one that is properly brought by his former colleague rather than himself.

the Court did not address Plaintiff's allegations regarding this statement as a First Amendment claim, based on his failure to brief the issue, or clearly acknowledge or deny making such a statement. *Hernandez*, 2005 WL 3293995, at *20 n.30. The Court further found that even if it were to be construed as a First Amendment claim, Plaintiff did not show that such a statement addresses a matter of public concern. *Id*. In response to the instant motion, Plaintiff has once again failed to clearly acknowledge or deny making that statement, or otherwise show that he was speaking out on a matter of public concern. Accordingly, he has failed to show that Blacknall violated his First Amendment rights in any way related to this speech.

In sum, even considering the additional argument and support Plaintiff has offered, he has failed to raise a material issue of fact as to his First Amendment retaliation and related claims. Accordingly, the Court finds that with respect to those claims, Plaintiff has failed to establish an underlying First Amendment violation on which to premise the District's liability under § 1983.

**D.**     **Other First Amendment Claim**

Finally, the Court discusses one additional First Amendment claim revisited by Plaintiff in response to the instant motion, which was previously addressed in the Court's memorandum opinion and order on the Individual Defendants' motion for summary judgment. In that order, the Court construed as arising under the First Amendment Plaintiff's claim that he was barred from teaching in Spanish. *Hernandez*, 2005 WL 723458, at *4 (citing Rule 7(a) Reply at 18-19.) Plaintiff alleges in his Rule 7(a) reply that Blacknall violated his "right of freedom of speech under the I Amendment of the U.S. Constitution by refusing [sic] Plaintiff to teach in Spanish." (Rule 7(a) Reply at 18-19.) In deciding the Individual Defendants' motion for summary judgment, the Court found that based on the support Plaintiff provided for his claim, it appeared to address a dispute over whether he was

following the District's bilingual curriculum by properly allocating classroom time to instruction

in English and Spanish, rather than a blanket refusal by Blacknall to allow him to teach in Spanish.[10]

*Hernandez*, 2005 WL 3293995, at *11.   In particular, the Court found that the situation was

analogous to the situation addressed by the Fifth Circuit in *Kirkland v. Northside Independent*

*School District*, in which the Fifth Circuit found that the plaintiff had presented a dispute about the

curriculum, not a matter of public concern. *Hernandez*, 2005 WL 3293995, at *11 (citing *Kirkland*,

890 F.2d at 800-02).

Plaintiff now alleges, apparently in connection with his claim that Blacknall would not allow

him to teach in Spanish, that by doing so, "Blacknall violated [his] right to teach under

Duncan[ville] ISD [] Code of Ethics and Standard Practices for Texas Educators, Standard 2.4."

(Resp. Br. at 26-27; 50.)   That Standard provides that an "educator shall not interfere with a

colleague's exercise of political, professional, or citizenship rights and responsibilities."  (Pl. App.

at 24.)   As discussed in the preceding paragraph, Blacknall does not appear to have forbidden

Plaintiff from using Spanish in the classroom, but rather directed him to follow District's bilingual

curriculum.   Even if Plaintiff had proffered evidence that Blacknall violated other District policies

by directing him to follow the bilingual curriculum, a violation of a District policy does not equate

---

[10]In support of this claim, Plaintiff pointed to four items in his response to the first motion for summary
judgment.  *Hernandez*, 2005 WL 3293995, at *10.  The first two are pages from the Commissioner's Rules
Concerning State Plan for Educating Limited English Proficient Students, in Chapter 89 of the Texas Administrative
Code, including a page setting forth the policy of the rules and another describing the program's content and design.
*Id*. (citing Rule 7(a) Reply App., Exh. R1 at 42-43.)  The third item is an excerpt of what appears to be a letter from
Defendants' attorneys to the Executive Director of the Texas State Board of Educator Certification, written in
response to a complaint filed by Plaintiff.  *Hernandez*, 2005 WL 3293995, at *10  (citing Rule 7(a) Reply App., Exh.
R3 at 44.)  The letter states that:
      there is no ethical violation in the instructional leader of a campus telling a bilingual teacher to
      teach English to his students and to stop his reliance on Spanish language handouts.  Teaching
      students more Spanish and using Spanish language handouts, rather than using Spanish to teach
      students English so that they can be integrated into English-speaking classrooms, is bad teaching.
*Hernandez*, 2005 WL 3293995, at *10.  Fourth, Plaintiff included a list of state-adopted textbooks.  *Hernandez*,
2005 WL 3293995, at *10 (citing Rule 7(a) Reply App., Exh. R4 at 45.)

with a constitutional violation.  Plaintiff's unsupported allegations that Blacknall violated District policy do not indicate that his constitutional rights were violated in any way.  Thus, even considering the additional argument Plaintiff has offered, he has failed to raise a material issue of fact with respect to his claims that Blacknall violated his First Amendment right by allegedly barring him from teaching in Spanish.  Accordingly, the Court finds that Plaintiff has failed to establish an underlying First Amendment violation on which to premise the District's liability under § 1983 with respect to this claim.

**E.**     **Fourteenth Amendment Claims**

The District also asserts that it is entitled to summary judgment on Plaintiff's claims that his Fourteenth Amendment rights were violated, based on this Court's previous findings that Plaintiff failed to raise a fact issue with respect to any of those claims.  (MSJ Br. at 5, 25.)  Plaintiff devotes the bulk of his response to discussing his First Amendment claims, and makes only one new argument in support of his Fourteenth Amendment claims.  As stated above, Plaintiff cannot establish municipal liability unless he first establishes an underlying constitutional violation.  *See Becerra*, 105 F.3d 1048.  Plaintiff's complaint and Rule 7(a) reply set forth a multitude of claims based on alleged violations of his right to due process as well as his liberty to pursue a profession and to contract, as well as several vague references to equal protection violations.  In deciding the Individual Defendants' motion for summary judgment, the Court construed those as Fourteenth Amendment claims and examined them exhaustively, finding that Plaintiff failed to create a fact issue with respect to any of them.  *Hernandez*, 2005 WL 3293995, at *13-21.  Below, the Court summarizes those findings and addresses Plaintiff's sole new argument.

"The due process clause of the 14th Amendment protects citizens from acts of government

that 'deprive any person of life, liberty or property, without due process of law[.]'" *Woodard v. Andrus*, 419 F.3d 348 (5th Cir. 2005) (citing U.S. Const. amend. XIV, § 1; *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).  "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." *Zinermon v. Burch*, 494 U.S. 113, 125-26 (1990) (citing *Parratt v. Taylor*, 451 U.S. 527, 537 (1981); *Carey v. Piphus*, 435 U.S. 247, 259 (1978) ("Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property.")).

To establish entitlement to due process under the Fourteenth Amendment, a plaintiff must show that (1) a state actor (2) deprived (3) a person (4) of a constitutionally protected liberty or property interest.  *Tex. Faculty Ass'n v. Univ. of Tex. at Dallas*, 946 F.2d 379, 383 (5th Cir. 1991). *See also Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 570 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."); *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450 (5th Cir. 1994) ("To state a cause of action under § 1983 for violation of the Due Process Clause, plaintiffs "must show that they have asserted a recognized 'liberty or property' interest within the purview of the Fourteenth Amendment, and that they were intentionally or recklessly deprived of that interest, even temporarily, under color of state law.") (quoting *Griffith v. Johnston*, 899 F.2d 1427, 1435 (5th Cir. 1990)); *Burris v. Willis Indep. Sch. Dist.*, 713 F.2d 1087, 1090 (1983).

**1.      Liberty to Engage in Practice of Chosen Profession**

As broadly construed by the Court in its order on the Individual Defendants' summary judgment motion, Plaintiff appears to assert that Blacknall and Cook  violated his right to engage

25

in the profession of teaching by recommending that his contract be terminated.  *Hernandez*, 2005
WL 3293995, at *14 (citing Rule 7(a) Reply at 1-2).  Plaintiff also asserted that Blacknall violated
his liberty to pursue his profession as a teacher in the following ways: (1) "denying him his rights
under his contract[;]" (2) providing an inaccurate, defective appraisal based on her opinion; (3)
"impeding and interfering with Plaintiff's right to serve the needs of the bilingual students[;]" (4)
"interfering with the General Guidelines for Bilingual/ESL Team Teaching given to Plaintiff to
follow by Duncanville School District[;]" (5) lying that the school was fined because he placed
furniture in front of his classroom door; and (6) accusing him of filing a false fire marshal report.
*Hernandez*, 2005 WL 3293995, at *14 (citing Compl. at 2; Rule 7(a) Reply at 7-22.)  Plaintiff
contends that Cook violated his liberty to engage in the practice of his profession by: (1) filing a[n]
untimely and false report against Plaintiff with the Texas State Board of Education Certification[]"
and (2) " telling three parents . . . that Plaintiff disclosed 'confidential student records to an outside
party[]'" rather than allowing Plaintiff an opportunity to "present his side."  *Hernandez*, 2005 WL
3293995, at *14 (Rule 7(a) Reply at 23-31.)   Plaintiff also alleges in his complaint, without
identifying an alleged actor, that he was harmed through a fraudulent note and accused of attempting
to incite parents and students.  *Hernandez*, 2005 WL 3293995, at *14 (Compl. at 3.)

    To prevail on a § 1983 claim that an action of one of the Defendants infringed upon a
cognizable liberty interest, Plaintiff must demonstrate the following:

> (1) that [he] was discharged; (2) that stigmatizing charges were made against [him]
> in connection with the discharge; (3) that the charges were false; (4) that [he] was not
> provided notice or an opportunity to be heard prior to her discharge; (5) that the
> charges were made public; (6) that [he] requested a hearing to clear [his] name; and
> (7) that the employer refused [his] request for a hearing.

*Hughes v. City of Garland*, 204 F.3d 223, 226 (5th Cir. 2000) (citing *Rosenstein v. City of Dallas*,

876 F.2d 392, 395-96 (5th Cir. 1991); *Moore v. Miss. Valley State Univ.*, 871 F.2d 541, 549 (5th Cir.

1989).  "[F]or a charge to be stigmatizing it must be worse than merely adverse; it must be such as

would give rise to a badge of infamy, public scorn, or the like." *Wells v. Hico Indep. Sch. Dist.*, 736

F.2d 243, 256 n.16 (5th Cir. 1984) (citing *Ball v. Bd. of Trs. of Kerrville Indep. Sch. Dist.*, 584 F.2d

684, 685 (5th Cir. 1978); *Burris*, 713 F.2d 1087 at 1092; *Huffstutler v. Bergland*, 607 F.2d 1090,

1092 (5th Cir. 1979); *LaBorde v. Franklin Parish Sch. Bd.*, 510 F.2d 590, 593 (5th Cir. 1975);

*Robertson v. Rogers*, 679 F.2d 1090, 1092 (4th Cir. 1982); *Press v. Bd. of Regents*, 489 F. Supp.

150, 155 (M.D. Ga. 1980)) (internal quotations omitted).  The stigma must rise to a level "that

forecloses 'freedom to take advantage of other employment opportunities.'" *Wells v. Hico*, 736 F.2d

at 256 (quoting *Roth*, 408 U.S. at 573; citing *Wells v. Doland*, 711 F.2d 670, 676 (5th Cir. 1983)).

      In the Court's order on Individual Defendants' motion for summary judgment, the Court

found that most of Plaintiff's claims regarding Blacknall and Cook's actions do not implicate a

liberty interest in his pursuit of the profession of teaching because they do not impose the type of

stigma required to establish such a claim.  One such claim is Blacknall and Cook's recommendation

that Plaintiff's contract not be renewed.  *Hernandez*, 2005 WL 3293995, at *15 (citing *Roth*, 408

U.S. at 573-574; *Wells v. Hico,* 736 F.2d at 256 (citing *Roth*, 408 U.S. at 574 n.13 and *Dennis v. S.*

*& S. Consol. Rural High Sch. Dist.*, 577 F.2d 338, 340 (5th Cir. 1978)).  Other actions the Court

found did not impose a stigma included Blacknall's alleged denial of Plaintiff's claimed rights under

his contract, such as the right to transfer to another school or teach summer school within the

District, and Plaintiff's allegations that Blacknall interfered with his ability to serve bilingual

students, follow District ESL guidelines, or teach in Spanish.  *Id*.  Because such actions do not

impose a stigma, the Court found that they do not implicate Plaintiff's liberty interest in the

occupation of teaching. *Id*.

The Court further found in its order on the Individual Defendants' summary judgment motion that Plaintiff failed to establish that Blacknall violated his liberty interests in connection with any of his claims regarding his appraisal, as that appraisal could be described as adverse in that Plaintiff received nine marks of below proficient out of a total of 50 areas in which he was rated, but not stigmatizing, and Plaintiff did not establish that the appraisal was made public. *Id*. at *16 (citing *Hankins v. Dallas Indep. Sch. Dist.*, 698 F. Supp. 1323, 1328 (N.D. Tex. 1988) (finding no deprivation of a liberty interest where information in the plaintiff's personnel file "did not reach the level of stigmatization as contemplated by *Campos* [*v. Guillot*, 743 F.2d 1123, 1125 (5th Cir. 1984)]")).

Next addressed in the Court's order on the Individual Defendants' summary judgment motion was Plaintiff's claim that Blacknall violated his liberty interests by allegedly accusing him of filing a false fire marshal report. The letter he submitted in support of this claim, however, did not actually accuse him of filing a fire marshal report and contained no information that could rise to a "badge of infamy, scorn, or the like." *Hernandez*, 2005 WL 3293995, at *16. In addition, the Court found that Plaintiff did not allege public disclosure of Blacknall's accusation. *Id*. The Court also found that Plaintiff failed to demonstrate a liberty interest violation in connection with this claim that Blacknall "l[ied] about the school being fined due to furniture placed in front of Plaintiff's classroom door[,]" as Plaintiff's evidence indicated that the accusation was not made public, but in fact shielded from public disclosure. *Id*. at 17.

Finally, the Court addressed in its order on the Individual Defendants' summary judgment motion Plaintiff's contentions with respect to Cook's allegation that Plaintiff violated confidentiality

laws by disclosing confidential student records to an outside party. *Id*. Cook made that allegation in a report to the Texas State Board of Education Certification ("SBEC") and in a letter dated June 23, 2003, which was addressed to parents who had sent him a letter on June 2, 2003; both the parents' letter and Cook's response were also sent to several media outlets as well as the Hispanic Chamber of Commerce and League of United Latin American Citizens (LULAC), among others. *Id*. The Court found that while an allegation that an individual violated the law by disclosing confidential student records clearly constitutes a serious and potentially stigmatizing charge, Blacknall and Cook presented evidence that Plaintiff was provided the opportunity for a name-clearing hearing, and that he thus could not establish that the public accusations violated his liberty interests.[11] *Id*.

### 2.     Liberty to Contract and Property Interest

Also addressed in the Court's order on the Individual Defendant's summary judgment motion was Plaintiff's assertion that Blacknall and Cook violated his right of liberty to contract by terminating his contract without good cause, and that Cook violated Plaintiff's liberty to contract by sending a report to the SBEC's Executive Director containing allegations that Plaintiff illegally transferred school property and violated confidentiality laws. *Id*. (citing Rule 7(a) Reply at 1-2; 29.) With respect to the claim regarding Cook's report to SBEC's executive director, the Court noted that it had already found that Plaintiff failed to establish a constitutional violation, in part because he was provided with the opportunity to clear his name. *Hernandez*, 2005 WL 3293995, at *17-19. To the extent that Plaintiff argues that his liberty to contract was violated because he was terminated

---

[11]Rather than have a hearing, Plaintiff signed an agreed final order before the SBEC indicating that "[a] complaint was filed against Respondent, and he was provided with the opportunity to respond to the complaint and to show compliance with the law." (Def. App. at 232-33.)

without good cause, the Court construed that claim as an alleged due process violation based on an allegedly protected property right to continued employment under the contract. *Id*. at 18-19. The Court found that under Texas state law, Plaintiff had no property interest in his probationary contract beyond the end of its term; thus, he was not deprived of any property interest by the nonrenewal of his contract, and was not entitled to due process as a matter of law under the Fourteenth Amendment. *Id*. at 19 (citing TEX. EDUC. CODE § 21.102(b); *Williams v. Tex. Tech Health Sci. Ctr.*, 6 F.3d 290, 293 (5th Cir. 1993); *Wells v. Hico*, 736 F.2d at 252; *Carey v. Aldine Indep. Sch. Dist*., 996 F. Supp. 641, 651-52 (S.D. Tex. 1998)).

### 3. Due Process Claims Raised Without Reference to Particular Liberty or Property Interest

The Court next addressed in its order on the Individual Defendants' motion for summary judgment the due process claims Plaintiff raised against Blacknall and Cook without specific reference to a particular property or liberty interest. *Hernandez*, 2005 WL 3293995, at *20. These claims include Plaintiff's contention that Cook failed to investigate Blacknall before submitting her contract nonrenewal recommendation to the Board, and that Blacknall failed to provide an intervention plan on the date she informed him that she was recommending that his contract not be renewed, misrepresented that she had the authority not to renew Plaintiff's contract, and lied at the Level II grievance hearing that Plaintiff came in late and left early and did not follow the Duncanville curriculum. *Id*. (citing Rule 7(a) Reply at 3, 12; 22-23; 33.) The Court found that Plaintiff failed to raise a fact issue with respect to these claims, as he cited no authority showing that he had a property or liberty interest in receiving an intervention plan, accurate information about his

contract nonrenewal,[12] accurate statements at his grievance hearing, or an investigation of Blacknall's recommendation, nor did any of those claims plausibly support a claim for a deprivation of property or liberty interests. *Hernandez*, 2005 WL 3293995, at *20.

### 4.      Due Process Claims Based on State Statutes and Regulations

The Fourteenth Amendment claims Plaintiff based on allegations that Blacknall violated various state statutes and regulations were also examined in the Court's order on the Individual Defendants' summary judgment motion. *Id.* These included allegations that Blacknall violated his due process by: (1) failing to provide him with timely documentation of a statement he allegedly made, in violation of the Texas Education Code and the Commissioner's Rules Concerning Educator Appraisal; (2) forging another teacher's signature on that note in violation of the Texas Penal Code;[13] (3) telling him she had the authority to recommend that his contract not be renewed, in violation of Texas' Professional Development and Appraisal System ("PDAS") rules; and (4) conducting an appraisal without complying with all PDAS requirements. *Id.* (citing (Rule 7(a) Reply at 3-6; 10; 12-16; 20-21.) The Court found that even assuming, *arguendo*, that Plaintiff could establish the occurrence of those violations, Plaintiff did not demonstrate that such a showing alone established that Blacknall or Cook violated Plaintiff's Fourteenth Amendment due process rights. *Hernandez*, 2005 WL 3293995, at *20 (citing *Rogers v. Nolan County*, 2004 WL 1698202, at *4-5

---

[12]Plaintiff cites a letter from Blacknall which states that "[a]s a probationary teacher with the Duncanville school district, I have not renewed your contract for the 2003-2004 school year. Contract recommendations go to the Duncanville school board on Monday, March 31, 2003. If you would like to turn in a letter of resignation today or Monday Morning I would immediately take your name off the list for contract no renewals." (Rule 7(a) Reply App. at 3.)

[13]Plaintiff also alleges that Blacknall violated the Texas Penal Code by committing an act of conspiracy with three other teachers, who he asserts were asked to "monitor, keep track, eavesdrop, and spy" on him. Plaintiff has not asserted any due process violation in connection with this claim, or any other constitutional violations; thus, the Court does not address it herein. (Compl. at 3; Rule 7(a) Reply at 6-7.)

(N.D. Tex. July 28, 2004); *Anderson v. Tex. Health Care Sys.*, 2000 WL 145082, at *3 (N.D. Tex. Feb. 8, 2000)).

### 5.      Equal Protection Claims

Finally, the Court addressed in its order on the Individual Defendants' summary judgment motion Plaintiff allegation that he was deprived of his Fourteenth Amendment rights to equal protection of the laws with respect to his liberty to serve as a bilingual teacher, contract, pursue a profession, and receive privileges under a contract implied in law.  *Hernandez*, 2005 WL 3293995, at *20-21.  The Court found that because Plaintiff neither alleged, much less presented any evidence demonstrating that Blacknall or Cook treated similarly-situated individuals differently on the basis of an impermissible ground, he has failed to establish that Blacknall or Cook violated Plaintiff's equal protection rights.  *Id.* (citing *Woodard v. Andrus*, 419 F.3d 348, 354 (5th Cir. 2005); *Johnson v. Houston Indep. Sch. Dist.*, 930 F. Supp. 276, 288 (S.D. Tex. 1996)).

In his response to the instant motion for summary judgment, Plaintiff asserts for the first time that Blacknall treated him differently on the basis of race and national origin by accusing only him of arriving late and not monitoring his students, while saying nothing to the two other unidentified male teachers at Acton, who are African-American and Caucasian.  (Resp. Br. at 39.)  Plaintiff presents this not as an equal protection claim, but as one that Blacknall violated a Board policy prohibiting discrimination on the basis of race, national origin, religion, sex, age, and other characteristics.  *Id.* at 38-39.  To the extent that this could be construed as an alleged equal protection violation, however, Plaintiff points to no evidence in the record to support of these bare

allegations.[14]  Accordingly, the Court finds that he has failed to establish that Blacknall violated his

right to equal protection under the Fourteenth Amendment.

In sum, even considering the additional argument Plaintiff has offered, he has failed to raise

a material issue of fact with respect to his claims that his Fourteenth Amendment rights were

violated by Blacknall or Cook.  Accordingly, the Court finds that Plaintiff has failed to establish an

underlying Fourteenth Amendment violation on which to premise the District's liability.

**F.      Municipal Liability for Alleged Constitutional Violations**

Because the Court finds that Plaintiff has failed to establish that Blacknall or Cook violated

Plaintiff's constitutional rights, the Court need not address whether any of those alleged violations

were caused by an official policy of the District.  *See Becerra*, 105 F.3d at 1047-48 (finding that

because there was no violation of plaintiff's constitutional rights, no § 1983 liability could be

imposed on the school district); *Greene v. Plano Indep. Sch. Dist.*, 103 Fed. Appx. 542, 544, n.5 (5th

Cir. 2004) (per curiam) ("Because we hold that no constitutional violation occurred, we need not

address whether the alleged violation was caused by the school district's official policy."); *Cochran

v. City of Deer Park, Tex.*, 108 Fed. Appx. 129, 131 (5th Cir. 2004) (per curiam) (finding that the

city and school district defendants "were properly dismissed, because . . . the complaint failed to

state a claim for an underlying federal constitutional violation on which to premise municipal

liability ) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *City of Canton v. Harris*,

---

[14]Plaintiff seeks to depose Blacknall to establish this alleged equal protection violation.  However, it appears that Plaintiff has access to other forms of evidence that could support this claim, such as through the time sheets he has acknowledged obtaining through discovery.  (See Pl. Mot. to Compel filed June 17, 2005, at 7-8.) Moreover, Plaintiff, who has not even identified those other male teachers by name, has furnished no evidence that he was similarly situated to them, such as by showing that parents of children in those teachers' classes expressed concerns about the supervision of their children in the morning, as pointed out by Blacknall in her October 31, 2002 meeting summary.  *See Bluitt v. Houston Indep. Sch. Dist.*, 236 F. Supp. 2d, 703, 734-35 (S.D. Tex. 2002).

489 U.S. 378, 385 (1989)).  However, even if Plaintiff had established a violation of his civil rights by Blacknall or Cook, he has failed to establish that the District would be liable for such a violation.

"[M]unicipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom."  *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).  A municipality cannot be liable for a § 1983 violation under a theory of respondeat superior or vicarious liability.  *See Baskin v. Parker*, 602 F.2d 1205, 1208 (5th Cir. 1979).  Rather, "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski*, 237 F.3d at 578.  In order for municipal liability to attach, the official complained of:

> must possess final authority to establish municipal policy with respect to the action ordered. . . . The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable. . . . [W]hether an official had final policymaking authority is a question of state law.

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-82 (1986).  Under Texas law, the final policymaking authority in an independent school district rests with the district's trustees.  *See Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993) ("Texas law is clear that final policymaking authority in an independent school district . . . rests with the district's board of trustees.") (citing TEX. EDUC. CODE ANN. § 23.01 (recodified at TEX. EDUC. CODE ANN. § 11.051 (Vernon 1996)).  A non-trustee may be a policymaker, however, if the defendant has delegated exclusive policymaking authority to that individual and cannot review that individual's actions or decisions.  *See Hoskins v. Kaufman Indep. Sch. Dist.*, 2003 WL 21517830, at *6 (N.D. Tex. June 30, 2003) (explaining that one may be a policymaker if the "governmental entity, through its lawmakers, has delegated exclusive policymaking authority to that employee, agency, or board and

cannot review the action or decision of the employee, agency, or board.") (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 130 (1988); *Worsham v. City of Pasadena*, 881 F.2d 1336, 1340-41 (5th Cir. 1989)).

First, Plaintiff does not allege in his pleadings that he was damaged by the actions of an official policymaker, either by alleging that the actions of the Board damaged him,[15] or by alleging that the Board delegated final policymaking authority to Blacknall or Cook, or that their decisions were non-reviewable by the Board.   Rather, his allegations focus on the individual actions of Blacknall and Cook.   The Court thus concludes as a matter of law that Plaintiff has failed to allege that Blacknall or Cook were official policymakers.   *See Hoskins*, 2003 WL 21517830, at *6.

Second, Plaintiff does not allege that the Board has any policy, custom or practice that violated his constitutional rights.   Plaintiff must allege the presence of '[a] persistent, widespread practice of [district] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents [district] policy."   *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1304 (5th Cir. 1995).   Plaintiff must identify the purported policy that violated his rights, show that the policy is attributable to the District, and establish that he incurred damages because of the application of that specific policy. *See Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984) (*en banc*).   Liability must rest on *official* policy, meaning the Board's own policy, not the policy of an individual official, such as

---

[15]Plaintiff has not specifically alleged that the Board took an action that violated his constitutional rights. While alleging a multitude of constitutional claims with respect to his contract nonrenewal, for example, the focus of Plaintiff's claims is on Blacknall and Cook's roles in the nonrenewal, even though Plaintiff acknowledges that the Board made the final nonrenewal decision.   To the extent that any of Plaintiff's § 1983 claims could be construed as allegations of unconstitutional action by the Board, Plaintiff has failed to raise an issue of material fact with respect to such allegations for the reasons discussed herein.   For example, the Court has found that Plaintiff had no protected property interest in the continuation of his probationary contract beyond its termination date; accordingly, the Board did not deprive him of a constitutional right by deciding not to renew the contract at the end of its term.

Blacknall.  *See id.* at 769.  "The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." *Fraire v. Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)  Plaintiff identifies a number of District policies in his response to Defendants' motion, but neither states nor implies that any of those policies led to the non-renewal of his contract, or any other injury he has alleged.  Rather, he identifies various policies only in terms of the alleged failure of Blacknall or Cook to adhere to those policies.  (*See, e.g.*, Pl. Resp. at 38.)  Plaintiff has therefore failed to establish that any policy, custom, or practice of the Board caused any of his alleged injuries.

Because Plaintiff has failed to allege that he was injured by a policymaker or a policy, practice, or custom established by the Board, Plaintiff has failed to establish the District's liability under § 1983.  Thus, the District's motion for summary judgment should be granted as to Plaintiffs' § 1983 claims against the District.

### V.  MOTION TO STAY AND MOTION FOR PROTECTIVE ORDER

Defendants moved for a stay of discovery and a protective order on February 3, 2006, after being served with *Plaintiff's Notice of Intention to Take Video Depositions of Defendant's* [sic] *Duncanville School District Designated Deponent's* [sic] *("Notice")*.  A brief background of prior discovery proceedings in this action provides context for the Court's decision on those motions.

**A.**      **Background of Discovery Proceedings**

On December 3, 2004, Plaintiff served sets of 25 interrogatories, 25 requests for admissions, and 25 requests for production on each of the Individual Defendants and the District.  The District agreed to submit timely responses, but the Individual Defendants filed a motion for protective order on December 20, 2004.  They argued that they should not be required to respond because Plaintiff's

requests were prematurely filed prior to a Rule 26(f) conference.  They also argued that they were entitled to a  stay because all of Plaintiff's non-§ 1983 claims against them were ripe for dismissal, as explained in their contemporaneously filed motion to dismiss and based on their assertion of qualified immunity as to Plaintiff's § 1983 claims, as set forth in their contemporaneously filed *Schultea* motion.  Following a hearing conducted on January 19, 2005, the Court denied  the Individual Defendants' motion for protective order.  Subsequently, on March 29, 2005, the Court granted the Defendants' motion to dismiss, leaving only §1983 claims remaining in the suit; the Court also granted the Individual Defendants' *Schultea* motion, thereby staying discovery as to the Individual Defendants.

Plaintiff filed a motion to compel responses to a number of his requests for production on June 17, 2005, and a motion for a continuance to respond to the Individual Defendants' pending motion for summary judgment in order to obtain additional discovery on July 1, 2005.  The Court conducted a hearing on both motions on July 13, 2005.  Plaintiff's motion to compel was denied as improperly seeking discovery related to claims that had already been dismissed or were otherwise not relevant to his remaining § 1983 claims.  For example, he sought extensive discovery on items related to his appraisal, though those claims had already been dismissed.  He also sought his former students' 2005 TAKS results to defend himself against accusations that he was a bad teacher.  The Court also denied Plaintiff's motion for a continuance to respond to the Individual Defendants' motion for summary judgment based on his failure to show how the discovery he sought would enable him to show that a material issue of fact existed as to his claims, but did extend his response deadline.

Subsequently, on July 21, 2005, Plaintiff filed notices of intent to depose eight non-parties.

37

Defendants filed a motion for protective order, seeking relief on a number of grounds. They argued, *inter alia*, that the individuals Plaintiff sought to depose would have information only about claims that had already been dismissed, or claims pending against the Individual Defendants, with respect to whom discovery had been stayed. Defendants further argued that Plaintiff improperly sought to have three of the individuals bring confidential student records to their depositions. The Court granted the Defendants' motion on August 26, 2005, finding that much of the discovery Plaintiff sought related to claims that had already been dismissed, or related to the merits of the matters he allegedly complained of, rather than whether he had actually made such complaints.

**B.      Whether Further Discovery Should Be Allowed**

In the instant motions for a stay of discovery and a protective order, Defendants assert that because this Court found no violation of Plaintiff's constitutional rights in ruling on the Individual Defendants' motion for summary judgment, allowing a deposition of a District representative at this stage would result in a "needless fishing expedition" that would waste school district resources. (Mot. to Stay at 5-6.) Defendants also express concern with respect to Plaintiff's ability to limit his discovery requests to pending issues in the suit. *Id.* at 6-7. They further argue that a stay is appropriate due to the pendency of the instant motion for summary judgment, which if granted would be dispositive of the entire case. *Id.* at 6. Finally, Defendants sought to have the motion quashed due to Plaintiff's failure to comply with Fed. R. Civ. P. 30 by concisely identifying and describing the subject matter of the questions to be asked in the deposition. (Mot. to Stay at 3-4.)

On February 15, 2006, Plaintiff filed a second notice of intent to depose a District representative; therein, he listed 126 matters on which he sought to ask questions. In his response to Defendants' motion, filed February 23, 2006, Plaintiff argues that "the facts sought in Plaintiff's

uncompleted discovery <u>will affect</u> the resolution of the Motion for Summary Judgment."[16]  (Resp. to Mot. Stay at 7.)  He argues that he must be allowed to depose a District representative prior to the Court's decision on the instant summary judgment motion.  The Court conducted a hearing on the Defendants' motions to stay and for protective order on March 2, 2006.

While Plaintiff did not file a motion for a continuance of the instant motion for summary judgment in order to conduct discovery, his response to Defendants' motions to stay and for protective order appears to seek such relief.  "A party seeking continuance of a motion for summary judgment in order to obtain further discovery must show 'why he needs additional discovery and *how* the additional discovery will create a genuine issue of material fact.'"  *Becerra*, 105 F.3d at 1048 (citing *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1442 (5th Cir. 1993) (emphasis in original)).   Because Plaintiff's response to the motion for stay does not show why he needs deposition testimony and how such testimony will create a genuine issue of material fact, the Court provided Plaintiff with an opportunity at the hearing to state on the record what additional discovery he needed in order to respond adequately to the motion for summary judgment.  The Court ordered a transcript and has reviewed each of the items mentioned by Plaintiff at the hearing; nearly all of those matters are also mentioned in Plaintiff's response to the instant summary judgment motion. As discussed in its analysis above, Court has found that a deposition would not yield any evidence relevant to the outcome not otherwise available to Plaintiff, primarily because Plaintiff has personal

---

[16]However, Plaintiff also asserts that "[t]he evidence produced by Plaintiff[] in his Response to Defendants' Motion for Summary Judgment response [sic] is sufficient to establish that there is a genuine issue of material fact for trial." (Resp. to Mot Stay at 5.)

knowledge of the matters on which he seeks deposition testimony.[17]  At the hearing, the Court asked

Plaintiff why he could  not address issues about the speech he asserts he engaged in through his own

affidavit; Plaintiff's answer did not respond to that question.  (Trans. at 44.)  The Court then asked:

"So my question is: How do Dr. Cook or Ms. Blacknall's depositions help you further establish your

speech if you're the best witness?"  Plaintiff responded by stating:

> It would support–definitely support and would impeach their affidavits.  In their
> affidavits they claim that plaintiff did this, did this, and did this and was this bad
> person.  He spoke Spanish, and he told them not to.  The information there shows
> that–the district (inaudible) shows that students were supposed to be taught 40
> percent in Spanish.  In their affidavits they claim that, yet Plaintiff was denied this
> opportunity, direct violation of federal law.

(March 2, 2006 Hr'g Trans. at 45.)  Plaintiff's response again does not precisely answer the Court's

question as to why he could not aver to matters within his knowledge.

Moreover, Plaintiff acknowledges that he did receive requested written discovery from

Defendant in May 2005.  *Id*. at 23-24.  He argues that the discovery he was provided was

insufficient, but admits that he did not file an additional motion to compel.  *Id*. at 23.  Additionally,

the Court finds, after reviewing the 126 matters on which Plaintiff seeks to depose a District

representative, that most relate to claims that have already been dismissed, such as those related to

claims under the Texas Administrative Code and Title VII.

Accordingly, for these reasons and because Plaintiff has personal knowledge of the matters

on which he seeks discovery that are relevant to the claims at issue in the instant motion for

summary judgment, the discovery sought would not affect the outcome of the instant motion, and

---

[17]The only exception is Plaintiff's claim that he expressed concerns about the lack of textbooks and a
teacher shortage to Mendoza and Northcutt, and that "certainly they must have passed [their knowledge of Plaintiff's
concerns] to the superintendent."  (March 2, 2006 Hr'g Trans. at 25.)  As discussed above, Plaintiff has not
established that he actually expressed such concerns to Mendoza and Northcutt, a matter on which he does have
personal knowledge.

Plaintiff's request for a continuance to take the deposition of a District representative is denied.  *See Becerra*, 105 F.3d at 1048 (finding that plaintiff did not meet her burden to obtain a continuance of a motion for summary judgment to obtain further discovery where there was no indication that the witnesses she sought to depose had personal information not otherwise available to her).   In addition, because the Court's ruling on the instant motion for summary judgment terminates this case, Defendants' motion for protective order and to stay discovery should be denied as moot.

## VI.  COUNTERCLAIM FOR COSTS AND REASONABLE ATTORNEYS' FEES

Defendants argue that Plaintiff's claims against them are frivolous, unreasonable, and without foundation, and that they are therefore entitled to reasonable attorneys' fees and costs under Tex. Educ. Code § 11.161 and 42 U.S.C. § 1988.  (MSJ Br. at 46-47.)  Plaintiff did not directly address this argument in his response, although he repeatedly asserts that his action is not frivolous.

Pursuant to Tex. Educ. Code § 11.161 ("§ 11.161"), a court may award attorneys' fees and costs to a defendant school district in an action brought under state law if the court finds that the action is "frivolous, unreasonable, and without foundation."  TEX. EDUC. CODE § 11.161 ("In a civil suit brought under state law, against an independent school district or an officer of an independent school district acting under color of office, the court may award costs and reasonable attorney's fees if: (1) the court finds that the suit is frivolous, unreasonable, and without foundation; and (2) the suit is dismissed or judgment is for the defendant.").  The decision to award attorneys' fees under § 11.161 is discretionary.  *See, e.g., Cavazos v. Edgewood Indep. Sch. Dist.*, 400 F. Supp. 2d 948, 966 (W.D. Tex. 2005) (noting that the court has discretion to award costs and attorneys' fees under § 11.161); *Mullinax v. Texarkana Indep. Sch. Dist.*, 2000 WL 33679265, *1 (E.D. Tex. Sept. 1, 2000) (observing that under Texas state law, an award attorney's fees and costs under § 11.161 is left to

the discretion of the trial court) (citing *Jackson v. Houston Indep. Sch. Dist.*, 994 S.W.2d 396, 403 (Tex. Civ. App.-Houston 1998) (no writ)).

Similarly, 42 U.S.C. § 1988 authorizes a court to exercise its discretion to award attorneys' fees to prevailing defendants in a suit brought pursuant to § 1983 if the court finds that the plaintiff's suit is frivolous, unreasonable, and without foundation.  42 U.S.C. § 1988(b) ("In any action or proceeding to enforce a provision of section[]... 1983... of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs..."); *Dean v. Riser*, 240 F.3d 505, 508 (5th Cir. 2001) ("[A]ttorney's fees for prevailing defendants are presumptively unavailable unless a showing is made that the underlying civil rights suit was vexatious, frivolous, or otherwise without merit."  In determining whether an action was frivolous, the court must determine "whether the case was so lacking in merit that it was groundless, rather than whether the claim was ultimately successful."  *United States v. Mississippi*, 921 F.2d 604, 609 (5th Cir. 1991).  Frivolity is determined by considering "(1) whether plaintiff established a prima facie case, (2) whether the defendant offered to settle, and (3) whether the district court dismissed the case or held a full-blown trial."  *Id.*  The fact that claims are dismissed before trial is not sufficient to support a finding of frivolity.  *Myers v. City of West Monroe*, 211 F.3d 289, 293 (5th Cir. 2000).

In the Court's orders on Defendants' motion to dismiss, summary judgment motion on grounds of qualified immunity, and the instant motion for summary judgment, the Court has found that Plaintiff's claims lacked legal justification.  However, the Court also recognizes that Plaintiff appears to have undertaken this legal battle based on a sincerely-held belief that he was discriminated against for his efforts to serve his Hispanic students and a misunderstanding of the

laws on which his claims are based.  While the Court has set forth in detail why Plaintiff's claims are lacking in merit, the Court finds that Plaintiff, who is proceeding *pro se*, nevertheless should not be forced to pay attorney's fees.[18]  *See K.U. v. Alvin Indep. Sch. Dist.*, 991 F. Supp. 599, 608 (S.D. Tex. 1998) (finding that although the plaintiff's claims lacked factual and legal justification, the motives in bringing the suit were laudable, and declining to order an award of attorneys' fees and costs); *Lawson v. Parish of St. Tammany*, 2003 WL 193463, at *1 (E.D. La. Jan. 27, 2003) (conceding that an award of attorneys' fees and costs would have been almost certain had a licensed attorney filed the action, but denying such an award based in part on the observation that the *pro se* plaintiffs' briefing reflected either a misunderstanding of the law on which their claim was based or a refusal to accept the unavailability of the relief sought).  However, Plaintiff is admonished that the Court may revisit this issue if he engages in further efforts to obtain relief on the matters of which he has complained in this suit.  *See K.U.*, 991 F. Supp. at 608 n.9 (reserving the right to revisit the issue of attorneys' fees and costs if plaintiff's parents persisted in the matter).

While the Court declines to award attorneys' fees and costs pursuant to the Defendants' counterclaim, the Court finds that an award of costs pursuant to Rule 54 of the Federal Rules of Civil Procedure is nevertheless appropriate.  Rule 54(d) provides that "[e]xcept when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs[.]"  FED. R. CIV. P. 54(d)(1).  The Fifth Circuit "recognize[s] a strong presumption that the court will award

---

[18]Defendants cite several cases in support of their motion, including *George v. Texas*, 788 F.2d 1099, 1100 (5th Cir. 1986), *Werch v. City of Berlin*, 673 F.2d 192, 195 (7th Cir. 1982), and *Church of Scientology v. Cazares*, 638 F.2d 1272, 1290 (5th Cir. 1981), where fees were awarded.  (MSJ Br. at 47-49.)  The Court has reviewed those cases, and find that none require that the Court order an award of attorneys' fees under the circumstances present here.

43

costs to the prevailing party." *Salley v. E.I. DuPont de Nemours & Co.*, 966 F.2d 1011, 1017 (5th

Cir. 1992) (citing *Sheets v. Yamaha Motors Corp., U.S.A.*, 891 F.2d 533, 539 (5th Cir. 1990).  Even

where a court declines to award costs pursuant to § 1988, an award of costs pursuant to Rule 54(d)

is appropriate, as such an award does not require a finding that the action is frivolous, unreasonable,

or without foundation.  *See Jones v. City of San Antonio*, 568 F.2d 1224, 1226 (5th Cir. 1978)

(affirming award of costs in case alleging claims under Title VII, § 1983, and other statutes,  stating

that Rule "54(d) grants costs to the prevailing party as a matter of course in the absence of a

countervailing rule or statute, unless the trial judge directs otherwise."); *Lewis v. Nat'l Labor

Relations Bd.,* 750 F.2d 1266, 1280 (5th Cir. 1985) (observing that standard for awarding fees under

Rule 54(d) is lower than *Christianburg*[19] standard); *Roe v. City of New Orleans*, 766 F. Supp. 1443,

1454 (E.D. La. 1991) (declining to award attorneys' fees in § 1983 action to prevailing defendant

pursuant to 42 U.S.C. § 1988, but ordering plaintiff to pay costs pursuant to 54(d)) (citing

*Finkelstein v. Barthelemy*, 678 F. Supp. 1255, 1267 n.81 (E.D. La. 1988) (citing *Jones*, 568 F.2d at

1226).  Accordingly, Defendants may recover the costs incurred in this case, as authorized by 28

U.S.C. § 1920.

## V.  CONCLUSION

For the foregoing reasons, the Court concludes that no genuine issue of material fact exists

with respect to Plaintiff's claims that Defendants violated his constitutional rights.  Accordingly,

*Defendants' Motion for Summary Judgment* is **GRANTED** with respect to Plaintiff's claims, and

Plaintiff's claims against the District and against Blacknall and Cook in their official capacities are

---

[19]*Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421 (1978) (holding that "a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.")

hereby **DISMISSED** with prejudice.  *Defendants' Motion for Summary Judgment* is **DENIED** as to Defendants' counterclaim for attorneys' fees and costs, and Defendants' counterclaim is dismissed with prejudice.   However, Defendants may recover their costs in this action pursuant to Fed. R. Civ. P. 54(d)(1).  Defendants' motions to stay and for protective order are **DENIED** as moot.

       **SO ORDERED** on this 27th day of April, 2006.


                                IRMA CARRILLO RAMIREZ
                                UNITED STATES MAGISTRATE JUDGE